UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
NAOMI DAVIES,

                Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION; SARA SCROGIN,

                Defendants.
------------------------------------------------------------x

DECLARATION OF BRYAN D. GLASS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR <u>SUMMARY JUDGMENT</u>

10 Civ. 5981
(RA) (GWG)

BRYAN D. GLASS, Esq., hereby declares pursuant to 28 U.S.C. Section 1746 and under penalty of perjury as follows:

1. I am a member of Glass Krakower LLP and attorney for Plaintiff Naomi Davies in the above-captioned action. I am familiar with the matters set forth below based on my representation of Ms. Davies in this case, in addition to the review of the case file in this matter.

2. This declaration is submitted in opposition to Defendants' Rule 56(b) motion for summary judgment seeking to dismiss the Complaint.

3. Annexed hereto as Exhibit 1 is a true copy of the UFT-DOE Section 3020-a disciplinary procedure for Teacher Performance Unit cases.

4. Annexed hereto as Exhibit 2 is a true copy of the Article 75 decision and order of Justice Manuel Mendez, dated June 14, 2012.

5. Annexed hereto as Exhibit 3 is a true copy of the Declaration of Plaintiff Naomi Davies, dated January 31, 2013.

Dated: New York, New York
       February 4, 2013

         GLASS KRAKOWER LLP

      By: ___/s/_____
         Bryan Glass, Esq.
         100 Church Street, 8th Floor
         New York, NY 10007
         (212) 537-6859

To: Michael A. Cardozo
  Corporation Counsel of the City of New York
  Attorney for Defendants
  100 Church Street, 2nd floor
  New York, New York 10007

Attn: Kathryn E. Leone
   Assistant Corporation Counsel

**EXHIBIT 1**

April 15, 2010

Michael Mulgrew, President
United Federation of Teachers
52 Broadway, 14th Floor
New York, New York 10004

Dear Mr. Mulgrew:

This letter will confirm the mutual understandings and agreements between the Board of Education of the City School District of the City of New York ("DOE") and the United Federation of Teachers ("UFT"). Nothing in this Agreement shall constitute a waiver or modification of any provision of any collective bargaining agreement, letter (including but not limited to the June 27, 2008 letter from the Chancellor to the President of the UFT) or other agreement between the DOE and the UFT except as specifically set forth herein. Nothing in this agreement shall be construed to convert non-mandatory subjects of bargaining into mandatory subjects of bargaining. As used herein, the term "CBA" shall refer to the collective bargaining agreement covering teachers and corresponding provisions of other UFT-DOE collective bargaining agreements.

The long delays that have arisen in the current process of investigating alleged acts of misconduct and adjudicating charges pursuant to Education Law § 3020-a benefit neither the DOE nor the employees represented by the UFT. The DOE and the UFT are committed to ensuring that the agreements reached here will be carried out so that those delays will be ended and the process outlined in the law, the contracts between the parties, and this Agreement will be adhered to.

For purposes of this Agreement, all timelines shall be measured in calendar days, but shall not include the summer break, all recess periods and holidays.

### *Reassignment*

*Misconduct Cases* (*i.e.,* any case deemed by the DOE to deal exclusively or primarily with an employee's behavior, not his or her pedagogy): Pending investigation of possible misconduct and completion of the § 3020-a hearing, the DOE may reassign an employee only to (i) a DOE administrative office to do work consistent with law (an "Administrative Office Assignment") or (ii) an administrative assignment within his or her school with a program consisting of Professional or Administrative Activities (as listed in CBA Articles 7(A)(6)(a), 7(B)(8)(a), 7(C)(4)(g)(1), or 7(K)(3)(d)) other than items #1 (small group instruction), #2 (one to one tutoring), #3 (advise student activities such as clubs, teams or publications) and #7 (conflict resolution for students), which shall be scheduled consistent with CBA Article 7(B)(2)(c) regardless of the division in which the employee works ("Administrative School Assignment").

Where the Chancellor or his designee determines that it is in the best interests of the school system that an employee accused of sexual misconduct as defined in CBA Article 21(G)(6) or serious financial misconduct involving more than $1,000 not be allowed to work in an Administrative Office Assignment or an Administrative School Assignment pending the outcome of the investigation, the DOE may suspend the employee with pay rather than reassign him/her. The determination of the Chancellor or his designee to suspend an employee with pay shall be in writing. Prior to a suspension from all duties with pay, the Chancellor or his designee shall consult with the UFT President or his designee.

The DOE shall prefer charges pursuant to Education Law § 3020-a[1] within 60 days of an employee being reassigned or suspended, except in cases where the reassignment or suspension was caused by (i) an allegation of sexual misconduct as defined in CBA Article 21(G)(6) that is being investigated by the Special Commissioner of Investigation for the New York City School District ("SCI"), (ii) an allegation of serious financial misconduct involving more than $1,000 that is being investigated by SCI, (iii) criminal charges pending against the employee, (iv) an allegation of serious assault that is being investigated by SCI, (v) an allegation of tampering with a witness or evidence, where the allegation of tampering is being investigated by SCI. In cases where the 60 day period does not apply, when SCI issues a report or, in the case of criminal charges, the employee notifies the DOE of the disposition of the criminal case pursuant to Chancellor's Regulation C-105, the DOE shall have 15 days to bring § 3020-a charges against the employee or return the employee to his or her prior assignment. Nothing herein shall waive any limitations period for the bringing of charges pursuant to Education Law § 3020-a. The Chancellor or his designee and the President of the UFT or his designee shall meet monthly, or less frequently if the UFT and DOE agree, to review the status of these cases. At the end of the first year of this Agreement, and in subsequent years if requested by the UFT, the DOE and the UFT will meet to review the issue of investigations and reassignments extending beyond 60 days and, if there has been a significant increase in the number of such investigations and reassignments, to negotiate ways to address this issue.

Except in those cases where the DOE is not required to prefer charges within 60 days, should the DOE not prefer § 3020-a charges within 60 days, the employee shall be returned to his/her prior assignment. If an employee is returned to his/her prior assignment, adverse action shall not be taken against the employee solely because of the reassignment. If § 3020-a charges are preferred subsequent to the expiration of the 60 day period, the employee may then again be reassigned to an Administrative Office Assignment or an Administrative School Assignment or, where the Chancellor or his designee determines that it is in the best interests of the school system that an employee accused of sexual misconduct as defined in CBA Article 21(G)(6) or serious financial misconduct involving more than $1,000 not be allowed to work in an Administrative Office Assignment or an Administrative School Assignment pending the outcome of the investigation, suspend the employee with pay rather than reassign him/her pending determination of the § 3020-a charges. The determination of the Chancellor or his designee to suspend an employee with pay shall be in writing. Prior to a suspension from all duties with pay, the Chancellor or his designee shall consult with the UFT President or his

---

[1] Probationary employees will be reassigned in the same manner as tenured employees under this Agreement, *i.e*, to an Administrative Office Assignment, Administrative School Assignment, or suspension with pay (if permitted by this Agreement). This Agreement shall not be construed to create tenure or Education Law § 3020-a rights for an employee.

2

designee. An employee's assignment pending investigation and/or a hearing shall not be raised at the hearing or deemed relevant in any way to the determination of the charges, any penalty issued or the adjudication of any issue in the hearing.

*Incompetence Cases* (*i.e.,* any case deemed by the DOE to deal exclusively or primarily with an employee's pedagogy) – Pending the bringing of Education Law § 3020-a charges for alleged incompetence and completion of the § 3020-a hearing, the DOE may reassign an employee only to an (i) Administrative Office Assignment or (ii) an Administrative School Assignment. The DOE shall prefer charges pursuant to Education Law § 3020-a within 10 days of an employee being reassigned. Should the DOE not prefer § 3020-a charges within 10 days, the employee shall be returned to his/her prior assignment. If an employee is returned to his/her prior assignment, adverse action shall not be taken against the employee solely because of the reassignment. If § 3020-a charges are preferred subsequent to the expiration of the 10 day period, the employee may then again be reassigned to an Administrative Office Assignment or an Administrative School Assignment pending determination of the § 3020-a charges.

*Tolling:* If the DOE gives a reassigned employee 48 hours notice of an interview which may lead to disciplinary action and the reassigned employee either fails to appear on the scheduled day or fails to notify the DOE that s/he is invoking any right he/she may have to not answer questions, the DOE shall reschedule the interview within a reasonable period of time and the time between the originally scheduled interview and the rescheduled interview shall not count towards the applicable 60-day or 10-day limits on the length of time an employee may be reassigned or suspended with pay. Where a principal schedules an interview which may lead to disciplinary action of an employee that has been given an Administrative School Assignment and 48 hours notice is not required by the CBA, Chancellor's regulations, or law, the following shall apply: If the reassigned employee either fails to appear on the scheduled day or fails to notify the principal that s/he is invoking any right he/she may have to not answer questions, the principal shall reschedule the interview within a reasonable period of time and the time between the first scheduled interview and the rescheduled interview shall not count towards the applicable 60-day or 10-day limits on the length of time an employee may be reassigned. Nothing herein shall constitute a waiver or alteration of any right the DOE may have to compel an employee to attend an interview which may lead to disciplinary action or any right an employee may have to not answer questions.

### Service of Charges

In order to make the process as efficient as possible, service of notice of the nature of the charges and the actual charges shall be consolidated and served together upon an employee along with specifications and, in incompetence cases, a bill of particulars. Nothing in this Agreement shall alter a Respondent's entitlement, if any, to a bill of particulars in misconduct cases.

*Probable Cause Determinations*

In addition to the enumerated acts set forth in CBA Article 21(G)(5), serious misconduct shall also include actions that would constitute a class A-I or A-II felony or any felony defined as a violent felony offense in NY Penal Law § 70.02. An indictment on a class A-I or A-II felony, an indictment on any felony defined as a violent felony offense in NY Penal Law § 70.02, or a felony indictment on any other conduct that constitutes serious misconduct pursuant to CBA Article 21(G)(5) shall create a rebuttable presumption of probable cause.

If a finding of probable cause was based on an indictment pursuant to CBA Article 21(G)(5), the employee shall remain off payroll pending the disposition of the criminal case. The DOE shall have 15 days after the employee notifies the DOE of the disposition of the criminal case pursuant to Chancellor's Regulation C-105 to bring Education Law § 3020-a charges based on the same conduct as was at issue in the criminal case. If the DOE prefers § 3020-a charges on the same conduct as was at issue in the criminal case within the 15 days, and the employee was convicted in the criminal case of any offense that constitutes serious misconduct, he/she shall remain off payroll until a decision in the § 3020-a case and such § 3020-a case shall be completed within the timeframes for hearings set forth in this Agreement. If the DOE prefers § 3020-a charges on the same conduct as was at issue in the criminal case within the 15 days, and the employee was acquitted of all offenses that constitute serious misconduct, the DOE shall reassign the employee to an Administrative Office Assignment or an Administrative School Assignment, suspend the employee with pay (if permitted pursuant to this Agreement) or request a second probable cause hearing to continue the suspension without pay until the final outcome of the § 3020-a hearing and such § 3020-a case shall be completed within the timeframes for hearings set forth in this Agreement. If the DOE does not bring Education Law § 3020-a charges within those 15 days, the employee shall be restored to the payroll effective as of the date the disposition of the criminal case and returned to his/her prior position.

If a finding of probable cause was based on criminal charges pursuant to CBA Article 21(G)(6), the DOE shall have 15 days after the employee notifies the DOE of the disposition of the criminal charge pursuant to Chancellor's Regulation C-105 to bring Education Law § 3020-a charges based on the same conduct as was at issue in the criminal charge. If the DOE brings such a § 3020-a charge, the employee shall remain off payroll until a decision in the § 3020-a case and such § 3020-a case shall be completed within the timeframes for hearings set forth in this Agreement. If the DOE does not bring § 3020-a charges based on the same conduct as was at issue in the criminal charge within 15 days of the employee notifying the DOE of the disposition of the criminal charge pursuant to Chancellor's Regulation C-105, the employee shall be restored to the payroll effective as of the date the disposition of the criminal charge.

Nothing in this Agreement shall alter the provisions of CBA Article 21(G)(5) and (6) with respect to entitlement to back pay. The DOE agrees to meet on a bimonthly basis with the UFT to assess the status of investigations extending beyond 60 days where the employee has been suspended without pay. *Timeframe for Hearings*

Within 10 - 15 days of DOE's receipt of the request for a hearing from an employee charged under Education Law § 3020-a, a pre-hearing conference shall be held. Both Education Law

§ 3020-a and the collective bargaining agreements require hearings, including closing statements, to be completed within sixty (60) days of the pre-hearing conference and a decision to be rendered within thirty (30) days of the final hearing date. The UFT and DOE agree this timeframe must be adhered to by all parties to the hearings and strictly enforced by hearing officers. Hearing officers shall establish a trial schedule at the pre-hearing conference to ensure that hearings are completed within the required statutory and contractual timeframes and ensure an equitable distribution of days between the DOE and the charged employee.

Education Law § 3020-a permits "limited extensions" beyond the 60 days where it is determined that "extraordinary circumstances" warrant. "Extraordinary circumstances" shall be construed narrowly by hearing officers so that the granting of "limited extensions" allowing hearings to last beyond sixty (60) days is the exception and not the rule. Pursuant to CBA Article 21, a hearing officer may be removed prior to the end of his or her one-year term only for good and sufficient cause, which may include failure to comply with this Agreement, upon mutual agreement of the UFT and DOE.

If the hearing officer determines that a necessary witness is a former student who is unavailable because he/she is residing outside of New York City or a current student who is unavailable because he/she has left New York City for an extended period of time, this shall constitute an "extraordinary circumstance." In such a case, the hearing officer shall schedule the hearing to begin or continue as soon as possible given the availability of the witness as demonstrated to the hearing officer.

Arbitrators serving on the competence panel must agree to provide seven (7) consecutive hearing dates as defined in CBA Article 21(G)(2)(a) per month for the months of September through June and two (2) hearing dates for the months of July and August.

### *Discovery and Testimony*

In order to comply with timelines for hearings, the UFT and DOE agree that hearings must be held in as efficient a manner as possible. Disputes relating to document production, witness lists and other procedural issues often consume hearing time and should be dealt with to the maximum extent possible in the pre-hearing conference. To that end, the UFT and DOE have already agreed in the June 27, 2008 letter from the Chancellor to President of the UFT to certain discovery procedures.

The hearing process itself can be conducted in a more efficient manner that allows for issues to be fully and fairly litigated. To accomplish this, the parties to the hearings shall adhere to the following guidelines:

1. It is the intent of the UFT and DOE that, to the extent practicable, hearing days shall be fully utilized, that hearing days not end before 5pm and the parties to the hearing have multiple witnesses ready to testify to avoid the loss of part of the day.
2. Where a hearing day is not fully used, the unused time will be counted towards the time allocated to the party that caused the delay.
3. Attorneys shall not meet with others between direct and cross examination for longer than 20 minutes, except in unusual circumstances.

5

4. Hearing Officers shall ensure that cross-examination is not used by either party as a dilatory tactic in order to reduce one of the parties' allotted time to present its case.
5. Evidence shall be limited to relevant matters.
6. Rebuttal shall be used only to deny some affirmative fact that the opposing party has tried to prove. During rebuttal, a party to the hearing may not offer proof to corroborate evidence that has already been presented by that party or proof tending merely to support that party's case after the opposing party has rested.

If relevant and requested at the pre-hearing conference, either party may introduce (i) relevant background evidence about a witness by affidavit from the witness; (ii) an affidavit from a doctor's office attesting to an employee's visit or non-visit on a particular date; (iii) an affidavit attesting to the date of an employee's arrest, the charge (if any) against the arrested employee, and the disposition of that charge. Such a witness may be cross-examined regarding any matter discussed in an affidavit.

If relevant, a (i) business record, (ii) attendance list from a faculty meeting, orientation and/or training session, or (iii) any human resource document submitted by a respondent (*e.g.*, absence or sick note) may be admitted with an affidavit from a custodian of the record, without the need for live testimony from a witness to authenticate the document.

A party to the hearing or the hearing officer may request an unedited copy of the relevant transcript if a certified transcript is not available when needed. The unavailability of a certified transcript shall not excuse adherence to the time limitations for completion of a hearing and issuance of a decision.

### *Non-Termination Cases*

The expedited hearing process as described in CBA Article 21(G)(3) shall be utilized as set forth therein, with the following modification: If the DOE decides not to seek a penalty of more than a suspension of 4 weeks or an equivalent fine, the case shall be heard under the expedited procedures provided in CBA Article 21(G)(3), without the need for the employee to accept an offer of expedited arbitration.

A separate track of "non-termination" cases will be established with a separate panel of additional hearing officers that exclusively hears expedited cases.

### *Panel of Hearing Officers*

The number of hearing officers shall be as follows:

    Incompetence Cases shall be heard by a panel of 14 hearing officers.

    Misconduct Cases shall be heard by a panel of 25 hearing officers.

    Expedited Cases shall be heard by a panel of hearing officers, the size of which will be set by the UFT and DOE as described below.

6

Representatives of the UFT and DOE shall meet monthly, or less frequently if the UFT and DOE agree, for the first year of this Agreement and at least twice a year thereafter (i) to agree on the number of hearing officers hearing expedited cases, (ii) to discuss the appropriateness of the number of hearing officers, including the possibility of agreeing to increase or decrease the number of hearing officers on either the incompetence or misconduct panels on either a temporary or permanent basis, and (iii) to discuss the appropriateness of the number of probable cause arbitrators, including the possibility of agreeing to increase or decrease the number of probable cause arbitrators. If the DOE believes there is a need for more hearing officers to comply with the timelines set forth in this Agreement, it shall request that the UFT agree to increase the number of hearing officers and the UFT shall not unreasonably deny an increase.

### *Decisions*

Both Education Law § 3020-a and the collective bargaining agreements require decisions within 30 days of the completion of the hearing.

### *Meeting with the Panel of Hearing Officers*

The Chancellor and the President of the UFT will personally, jointly meet with the panel of hearing officers annually to impress upon the hearing officers that both parties to this Agreement are serious about meeting the timelines in the law, the collective bargaining agreements, and this Agreement. The Chancellor and the President will urge the hearing officers to strictly control the hearings and require all parties to the hearing to conform to the timelines provided herein. They will assure the hearing officers that no hearing officer will be removed by either party to this Agreement for enforcing these rules.

### *Mediation of Education Law § 3020-a charges*

This section, "Mediation of Education Law § 3020-a charges," shall apply to all employees with pending Education Law § 3020-a charges on or before September 1, 2010 or being investigated on or before September 1, 2010 and the investigation results in § 3020-a charges. The parties to the § 3020-a hearings shall begin mediating such cases upon the signing of this Agreement.

The UFT and DOE shall agree on hearing officers on the rotational panel that shall serve as mediators one day per month (in addition to their required hearing days that month). The UFT and DOE may also jointly select mediators not currently on the panel of hearing officers.

Each case subject to mediation shall be assigned, on a rotational basis, to a mediator, other than the hearing officer assigned to decide the case.

The employee (and the employee's representative, if any) and a representative of the DOE with authority to negotiate settlement agreements (subject to final supervisory approval) shall meet with the mediator. The mediator shall work informally to assist the charged employee and the DOE in reaching, if possible, a voluntary, negotiated resolution of the Education Law § 3020-a charges. The mediator shall not decide the merits of the Education Law § 3020-a charges or

impose a decision. Instead, the mediator shall help the charged employee and the DOE to, if possible, agree on a mutually acceptable resolution.

No mediator shall be compelled to or voluntarily disclose (including in any subsequent proceedings under §3020-a of the Education Law) any information learned during the mediation.

### *Backlog*

Effective the first day of the 2010-2011 school year, all employees who, prior to August 31, 2010, have been (i) removed from their positions and assigned to a temporary reassignment center or (ii) charged pursuant to Education Law § 3020-a shall be reassigned to an Administrative Office Assignment or an Administrative School Assignment or suspended with pay (if permitted by this Agreement).

For all employees charged prior to August 31, 2010, the requirement that the pre-hearing conference be scheduled within 10-15 days of the charge shall not apply, but the § 3020-a hearing and decision shall be completed by December 31, 2010.

For all employees who were assigned to a TRC prior to August 31, 2010 and were not charged prior to August 31, 2010, the 10 or 60 day period to charge an employee or return him/her to his/her prior assignment, shall run from September 1, 2010.
Effective September 1, 2010, the parties will implement the new timelines set forth in this Agreement, which shall apply to all cases charged after September 1, 2010.


Sincerely,


Joel I. Klein
Chancellor
New York City Department of Education



Agreed and Accepted By:

_____
Michael Mulgrew
President
United Federation of Teachers

**EXHIBIT 2**

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:     **MANUEL J. MENDEZ**     PART 13
*Justice*

NAOMI DAVIES,
     Petitioner,

| | |
|---|---|
| INDEX NO. | 100349/11 |
| MOTION DATE | 05-02-2012 |
| MOTION SEQ. NO. | 001 |
| MOTION CAL. NO. | |

For an Order Pursuant to Article 75
of the Civil Practice Law and Rules

     -against-

NEW YORK CITY DEPARTMENT OF EDUCATION,
     Respondent,

UNFILED JUDGMENT
This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).

The following papers, numbered 1 to  **6**  were read on this petition to/for  **Art. 75** 
and Cross-Motion to Dismiss the Petition

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | 1 - 3 |
| Answering Affidavits — Exhibits _____ cross motion | 4 - 5 , 6 |
| Replying Affidavits | |

Cross-Motion:   **X** Yes    No

*[Margin: MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):]*

Upon a reading of the foregoing papers, it is ordered and adjudged that the petition pursuant to CPLR § 7511, and Education Law §3020-a to vacate the arbitrator's decision and remand this matter for a determination of a lesser penalty, is granted. The cross-motion to dismiss the petition pursuant to CPLR §3211[a][5],[7], and CPLR §404[a], is denied.

Petitioner seeks an Order pursuant to CPLR 7511, vacating and setting aside an arbitrator's decision and award that resulted in dismissal from her teaching position in the Department of Education. Petitioner claims that the arbitrator exceeded his authority, and that the final determination is excessive.

Respondent opposes the petition and cross-moves to dismiss. Respondent withdrew its claim for dismissal under CPLR §3211[a][5], and only seeks to dismiss under CPLR §3211[a],[7] for failure to state a cause of action. Pursuant to CPLR §404[a], respondent seeks to interpose an answer to the petition.

Pursuant to Education Law §3020-a the petition to vacate a determination of a hearing officer or arbitrator, requires that the Court apply the standard set forth in CPLR §7511. The standard for granting a petition pursuant to CPLR §7511 is to, "show misconduct, bias, excess of power, or procedural defects." An arbitrator's award can be set aside if it violates strong public policy or is totally irrational (Austin v. Board of Education of the City School Dist. Of City of New York, 280 A.D. 2d 365, 720 N.Y.S. 2d 344 [N.Y.A.D. 1st Dept., 2001] and Matter of Pell v. Board of Education, 34 N.Y. 2d 222, 356 N.Y.S. 2d 833, 313 N.E. 2d 321 [1974]). Compulsory arbitration has stricter judicial scrutiny. After compulsory arbitration the determination, "must be in accord with due


process and supported by adequate evidence, and must also be rational and satisfy the arbitrary and capricious standards of CPLR article 78" ( Lackow v. Dept. of Education (or "Board") of City of New York, 51 A.D. 3d 563, 859 N.Y.S. 2d 52 [N.Y.A.D. 1st Dept., 2008]; City School Dist. of the City of New York v. McGraham, 75 A.D. 3d 445, 905 N.Y.S. 2d 86 [N.Y.A.D. 1st Dept., 2010]).

The burden of proof is on the party challenging the determination to show that it is invalid (Lackow v. Dept. of Educ. (or "Board") of City of New York, 51 A.D. 3d 563, supra; Austin v. Board of Educ. of the City School Dist. of City of New York, 280 A.D. 2d 365, supra). Hearsay evidence can be the basis for the administrative determination (Gisors v. New York City Dept. of Educ. for City School Dist. Region 10, 94 A.D. 3d 584, 942 N.Y.s. 2d 108 [N.Y.A.D. 1st Dept., 2012]). A hearing officer's finding that the testimony was inconsistent or lacked credibility is not a basis to vacate the award (Lackow v. Dept. of Educ. (or "Board") of City of New York, 51 A.D. 3d 563, supra). A claim of actual bias or misconduct by a hearing officer requires clear and convincing evidence, inference of partiality is not enough to vacate the award (Zrake v. New York City Dept. of Educ., 41 A.D. 3d 118, 838 N.Y.S. 2d 31 [N.Y.A.D. 1st Dept., 2007]).

The petitioner is a tenured teacher with twenty-two (22) years of service, and no prior disciplinary charges. She was retained to teach eighth grade English by the East Bronx Academy for the Future (EBA) starting the September 2007 school year. Petitioner did not have prior experience teaching eighth grade students. She taught English at EBA for two years and in 2009 was charged with specifications seeking termination based on unsatisfactory performance. Petitioner was accused of not following disciplinary procedures as outlined in the "staffulty" handbook; failing to submit daily lesson plans; failure to keep records of grades, attendance and student work; delivery of unsatisfactory lessons and failing to effectively implement recommendations of administrators, peer observers, peer teachers, consultants and coaches.

A hearing took place over the course of fifteen days with witnesses and other evidence submitted. Amongst the evidence submitted was, the Chancellor of the New York City Department of Education's "Citywide Standards of Discipline and Intervention Measures," petitioner's Annual Performance Review, written complaints by petitioner and students (Cross-Mot. Exh. R & S), and Logs of Assistance (Mot. Exh. D). The arbitrator, Richard M. Gaba, Esq., rendered a decision dated December 18, 2010, finding that almost all of the specifications were sustained (Mot. Exh. A). The arbitrator found that petitioner resisted efforts of school administration to help her become a satisfactory teacher, failed to make necessary efforts to improve and determined she should be dismissed from her teaching position.

Petitioner claims that the arbitrator's determination was excessive and disproportionate to the charged conduct. She claims the arbitrator ignored a history of physical and sexual assaults by the students that went undisciplined by school administration in violation of the Chancellor's Regulations and Code of Student Conduct. Petitioner also claims that the Logs of Assistance relied on by the arbitrator, were incomplete and disclose many inappropriate entries that were overlooked, including assistance in the form of substitute teachers on days she was not teaching, and counting staff or disciplinary meetings as assistance. Petitioner states that she was not sent to classes or offered a course, even though she did not have any training in the "workshop model" the school asked her to follow.

Petitioner refers to another hearing conducted conterminously with hers, Dept. of Education v. Jane Lewinter, SED File # 13, 498, involving a tenured science teacher at (EBA,) that came from another school, and never previously used the "workshop model." The Department of Education in the *Lewinter* matter claimed that despite significant assistance she was not capable of imparting knowledge to students. The hearing officer in the *Lewinter* matter, found the Logs of Assistance incomplete and not tailored for the needs of the teacher, and that the Department failed to take reasonable steps to permit, encourage or otherwise assist in improving her performance. The award in the *Lewinter* matter found that Department did not sustain its burden of proof to justify discharge but that her performance was substandard. Jane Lewinter was suspended without pay for six months, and directed to take classes/workshops, up to six sessions, in classroom management sessions or any area selected by, and paid for by the Department. The petitioner seeks to have the December 18, 2011 determination remanded for a lesser punishment consistent with the facts and mitigating factors as stated in the *Lewinter* matter.

Respondent seeks to dismiss the petition claiming that it fails to state a cause of action. Respondent states that the arbitrator considered all of petitioner's claims, including those concerning physical and sexual assault and found them unavailing. Respondent also states that the arbitrator found the record established that petitioner had more than twenty years of experience, should have been able to comply with the recommendations provided, and refused all efforts at remediation. Respondent distinguishes the *Lewinter* matter claiming that Ms. Lewinter made requests for assistance which were not properly addressed, but the petitioner did not seek assistance. Respondent claims that petitioner has not demonstrated that a lesser penalty was warranted or alleged facts sufficient to vacate or modify the arbitrator's determinations. Alternatively, pursuant to CPLR 404[a], respondent seeks to submit an answer.

Pursuant to CPLR 404[a], the Court may permit the respondent to submit an answer after denial of its motion to dismiss a petition, if there remain issues that could be clarified (In re Cline, 72 A.D. 3d 471, 901 N.Y.S. 2d 2 [N.Y.A.D. 1st Dept., 2010]).

Upon review of all the papers submitted this Court finds that the petitioner has met her burden of proof. The arbitrator failed to address school administration's noncompliance with the Chancellor's Rules as a potential contributing factor to the inability to control the classroom. The penalty of termination, after twenty two years of service without prior disciplinary charges, the arbitrator's reliance on inadequate evidence in the form of "Logs of Assistance" and the department's failure take steps to provide assistance tailored to the petitioner's needs, is shocking to this Court's sense of fairness. It is also shocking to one's sense of fairness that petitioner was dismissed from employment, when under similar circumstances another teacher received a penalty of six months suspension without pay and classroom management workshops. The petitioner has met her burden of proof as to relief sought in the petition. Respondent has not established a basis to grant its motion to dismiss for failure to state a cause of action or that there remain issues that are a basis to permit the submission of an answer.

Accordingly, it is ORDERED AND ADJUDGED that the petition pursuant to CPLR §7511, and Education Law §3020-a to vacate, and set aside the decision of the arbitrator and remand this matter for a determination of a lesser penalty, is granted, and it is further,

ORDERED, that the arbitrator's decision and award, dated December 18, 2011, is reversed and annulled and it is further,

ORDERED that the matter is remanded for the imposition of a lesser penalty, the remainder of the relief sought is denied, and it is further,

ORDERED and ADJUDGED, that the cross-motion to dismiss the petition pursuant to CPLR §3211[a][5],[7] and CPLR §404 [a], is denied

This constitutes the decision and judgment of this court.

ENTER:

MANUEL J. MENDEZ,
J.S.C.

Dated: June 14, 2012

Check one:   X   FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION
Check if appropriate:   ☐ DO NOT POST   ☐ REFERENCE

UNFILED JUDGMENT
This judgment has not been entered by the County Clerk and notice of entry cannot be served based hereon. To obtain entry, counsel or authorized representative must appear in person at the Judgment Clerk's Desk (Room 141B).

**EXHIBIT 3**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------
NAOMI DAVIES,

                        Plaintiff,

          -against-

NEW YORK CITY DEPARTMENT OF EDUCATION;
SARA SCROGIN

                      Defendants,
-------------------------------------------------------------------

**DECLARATION OF PLAINTIFF NAOMI DAVIES**

10 CV 5981
(RA)(GWG)

    NAOMI DAVIES, being duly sworn, swears to the following under penalty of perjury:

1. I am the Plaintiff in the above-referenced action.

2. I write this declaration in support of my opposition papers to Defendants' motion for summary judgment, wherein I understand Defendants seek to dismiss my case before a trial of this matter.

3. I have reviewed Principal Scrogin's declaration, and, from my knowledge and recollection, I was not aware of any other teachers who took FMLA or other leaves during the 2007-08 school year who received Satisfactory evaluations. As Principal Scrogin has not identified those teachers, I have no way of verifying the accuracy of her statement.

4. In fact, I am aware at least two other teachers at the school who did or attempted to take leaves during the school year and did appear to suffer retaliation by the school principal during the 2007-08 school year based on those leaves.

5. One such teacher is Jane Lewinter, who attempted to take a leave and then received a similar barrage of unsatisfactory observations and letters to file from Principal Scrogin and the school administration, which eventually led to Section 3020-a disciplinary charges against her as well. I am aware that she also has a federal FMLA retaliation case pending against Principal Scrogin and the NYCDOE.

1

6. Another such teacher at the school was Ruth Perry, who was threatened with termination as a probationary teacher shortly after informing the school principal that she had become pregnant, and ultimately resigned from the school.

7. I also recall another probationary teacher who was terminated after she disclosed a disability to the school principal during the 2007-08 school year.

8. I believe I was subject to a relentless pattern of harassment, retaliation, and abuse by the school administration after I returned from FMLA leave precipitated by the administration's failure to provide support and safety structures for teachers in seeking to manage and discipline misbehaving students at the school. Before I took the FMLA leave, I never had been written up or received an unsatisfactory observation in more than 20 years of teaching.

9. Based on the above, and the other opposition papers accompanying this affidavit, I respectfully request that my case be allowed to proceed to trial.

_____
NAOMI DAVIES

Sworn to before me
this 31ˢᵗ day of January,
2013.

_____
NOTARY PUBLIC

BRYAN GLASS
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02GL6068975
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES 1/24/14