UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

NAOMI DAVIES,

**PLAINTIFF'S COUNTER-STATEMENT OF MATERIAL FACTS TO DEFENDANTS' <u>RULE 56.1 STATEMENT</u>**

Plaintiff,

-against-

10 Civ. 5981 (RA) (GWG)

NEW YORK CITY DEPARTMENT OF EDUCATION;
SARA SCROGIN,

Defendants.

-------------------------------------------------------------x

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff NAOMI DAVIES

submits herewith his counterstatement of material facts:

**Statement**

1.      Plaintiff, a tenured teacher employed by the DOE, brings this action pursuant to

the Family Medical Leave Act, 29 C.F.R. § 825.215 ("FMLA"), alleging retaliation for taking a

leave of absence pursuant to the FMLA.      <u>See</u> Complaint, filed August 9, 2010 at ¶ 1

(hereinafter, "Compl."), annexed as Exhibit A.[1]

**Counter-statement**

1.      Plaintiff refers to the Complaint for a full and accurate description of Plaintiff's

claim with respect to paragraph 1.

---

[1]      References to all exhibits are to those annexed to the Declaration of Kathryn E. Leone, dated July 2, 2012, ("Leone Decl.") submitted herewith in support of Defendants' motion for summary judgment.

**Statement**

2.      Specifically, Plaintiff alleges that upon resuming her duties after taking an FMLA leave at the East Bronx Academy for the Future ("EBA"), she was retaliated against by the Principal of EBA Sarah Scrogin ("Scrogin") who wrote disciplinary letters to Plaintiff's file, issued warnings to her, failed to protect her from assaults and harassment by students, issued numerous unsatisfactory observation reports and two annual performance evaluation ratings to her, assigned her to classes comprised of "disruptive students," removed her from her regular teaching assignment after her return from medical leave, and sought to terminate her employment under section 3020-a of the New York Education Law. See Compl., Exhibit A at ¶¶ 2, 14-16.

**Counter-statement**

2.      Plaintiff refers to the Complaint for a full and accurate description of Plaintiff's claim with respect to paragraph 2.

**A.      Background**

**Statement**

3.      From 1985 to 2000, Plaintiff worked as an English teacher at Christopher Columbus High School (P.S. 415) located in the Bronx. See Davies Depo., Exhibit B at 27:12-17; see also DOE Employment Information Sheet for Naomi Davies, Exhibit C.

**Counter-statement**

3.      Plaintiff does not dispute paragraph 3.

**Statement**

4.     Plaintiff sustained a line of duty injury and took leave from the school.  Plaintiff did not return to Christopher Columbus High School because she was "extremely frightened" and concerned that the school "was just not orderly."  See Davies Depo., Exhibit B at 33:8-10; 34:2-3.

**Counter-statement**

4.     Plaintiff objects to the slanted characterization and refers to the deposition transcript for a full and accurate description with respect to paragraph 4.

**Statement**

5.     After leaving Christopher Columbus High School, Plaintiff worked at Manhattan Center for Science and Math from September 2000 through September 2001 as an English teacher.  See Davies Depo., Exhibit B at 34:9-10; see also Exhibit C.

**Counter-statement**

5.     Plaintiff does not dispute paragraph 5.

**Statement**

6.     Plaintiff testified that she left Manhattan Center for Science and Math after a year because she "wasn't feeling comfortable. . . The school was alright, but [she] was really uncomfortable."  See Davies Depo., Exhibit B at 34:24-35:1.  According to Plaintiff "[t]here was nothing wrong with the students, it was really [her]" and that "[she] was uncomfortable in large groups of students."  Id. at 35:9-11.

**Counter-statement**

6.    Plaintiff objects to the slanted characterization and refers to the deposition transcript for a full and accurate description with respect to paragraph 6.

**Statement**

7.    In or around September 2001, Plaintiff resigned from her employment at the DOE and started working as a volunteer for an organization called Ukraine Project.  <u>See</u> Exhibit C; <u>see also</u> Davies Depo. Exhibit B at 35-12: 35:23.

**Counter-statement**

7.    Plaintiff does not dispute paragraph 7.

**Statement**

8.    In November 2003, Plaintiff returned to the DOE and started working at Evander Childs High School in the Bronx as an English teacher.  <u>See</u> Exhibit C; <u>see also</u> Davies Depo., Exhibit B at 36:12-16.

**Counter-statement**

8.    Plaintiff does not dispute paragraph 8.

**Statement**

9.    In August 2007, Plaintiff was excessed from her position at Evander Childs High School during the phase-out of the school and placed in the Absent Teacher Reserve.  <u>See</u> Davies Depo., Exhibit B at 40:3-8;  <u>see also</u> Exhibit C.

**Counter-statement**

9.      Plaintiff does not dispute paragraph 9 but notes that the entire school was excessed because the school closed after that school year.

**B.      2007-2008 School Year**

**Statement**

10.     In or around mid-September 2007, Principal Scrogin contacted Plaintiff regarding an opening at EBA for an 8th grade English teacher position.  <u>See</u> Davies Depo., Exhibit B at 41:14-25.

**Counter-statement**

10.     Plaintiff does not dispute paragraph 10.

**Statement**

11.     After meeting with Principal Scrogin and participating in a demonstration class, Plaintiff was hired to teach English to eighth grade students.  <u>See</u> Davies Depo., Exhibit B at 42:-9-45:9.

**Counter-statement**

11.     Plaintiff does not dispute paragraph 11.

**Statement**

12.     Plaintiff began in her new position at EBA on September 25, 2007, approximately three weeks after the beginning of the Fall 2007 semester.  <u>See</u> Exhibit C; Davies Depo., Exhibit B at 39:18-22.

**Counter-statement**

12.     Plaintiff does not dispute paragraph 12.


**Statement**

13.     On October 9, 2007, approximately two weeks after Plaintiff started working at EBA, she filed a Comprehensive Injury Report asserting that she had been injured on October 4, 2007 when a student fell "onto [her] back."  <u>See</u> Plaintiff's Comprehensive Injury Report dated October 9, 2007, Exhibit D.

**Counter-statement**

13.     Plaintiff does not dispute paragraph 13, but notes that Defendants omit that Plaintiff also was assaulted and injured by a student the very first week in her new position at EBA and filed a Comprehensive Injury Report regarding that incident as well.  *See* Davies Deposition Transcript at pp. 49-56, Exhibit A to Glass Declaration.


**Statement**

14.     The DOE requires that injuries sustained in the line of duty must be reported to the school principal within 24 hours.   <u>See</u> DOE Personnel Memorandum #4 dated October 24, 2002, re: Policy and Procedures on line of Duty Injuries for Pedagogical Employees (LODI), Exhibit E.  Plaintiff, however, did not submit her application until October 9, 2007, five days after the alleged incident.  <u>See</u> Exhibit D.  In her application, Plaintiff sought LODI leave for the days she had been absent from work after the incident: October 5 and 9-12, 2009.  <u>Id</u>.

**Counter-statement**

14.     Plaintiff does not dispute paragraph 14 but notes that Plaintiff filed an accident report the same day of the incident and the school was timely notified.

**Statement**

15.     Plaintiff returned to work on Monday, October 15, 2007.  See Letter from Principal Scrogin to Plaintiff dated November 20, 2007, Exhibit F.  On that date, Principal Scrogin and Assistant Principal Nichole Campbell met with Plaintiff to discuss her attendance. Id.  Because of the importance of maintaining continuity of instruction and the need for teachers to be present, they advised Plaintiff that excessive absences could result in an unsatisfactory rating.  Id.

**Counter-statement**

15.     Plaintiff does not dispute paragraph 15.

**Statement**

16.     Plaintiff worked from October 15, 2007 to October 29, 2007.  Id.  On October 30, 2007, Plaintiff stopped reporting to work. Id.

**Counter-statement**

16.     Plaintiff disputes paragraph 16 to the extent that it is misleading because she was injured on the job again as of October 2007.

**Statement**

17.     Plaintiff testified that she decided to take an FMLA leave because "[she] wasn't well."  See Davies Depo., Exhibit B at 57:21-24.  Plaintiff further stated that "[i]t was a whole slew of things. It was my back. It was psychologically, my stomach, but it was all connected. It all went back to being pushed [earlier in the school year by a student at EBA].  That set it off. Not coming to school to enjoy my teaching career. It wasn't good."  Id. at 58:2-6.

**Counter-statement**

17.     Plaintiff does not dispute paragraph 17.

**Statement**

18.     By letter dated November 20, 2007, Principal Scrogin advised Plaintiff that she had been absent for 16 days from October 5 through November 15, 2007, informed Plaintiff that her request for LODI leave was denied as a result of her failure to submit an accident report in a timely fashion and failure to submit additional forms, and informed Plaintiff that her request for FMLA leave was approved.  See Exhibit F.

**Counter-statement**

18.     Plaintiff does not dispute paragraph 18.

**Statement**

19.     Plaintiff's FMLA leave was approved by the DOE from December 1, 2007 to January 22, 2008.  See Letter from HR Connect to Plaintiff dated March 14, 2008, Exhibit H, see also Exhibit C.

**Counter-statement**

19.     Plaintiff disputes paragraph 19 to the extent that she timely submitted all necessary forms, and refers to the letter referenced therein for a true and accurate statement of its contents.

**Statement**

20.     On or about January 23, 2008, Plaintiff returned from her FMLA leave. <u>See</u> Exhibit C.  Principal Scrogin assigned Plaintiff one "second session" English class and asked her to fill in for other teachers on an as needed basis throughout the school day.  <u>See</u> Davies Depo., Exhibit B at 60:6-11.

**Counter-statement**

20.     Plaintiff refers to the letter referenced in paragraph 20 for a true and accurate statement of its contents.

**Statement**

21.     Even though second session classes are offered to students from 2:00 p.m. to 6:00 p.m., Plaintiff kept regular school day hours, approximately 8:00 a.m. to 3:10 p.m., as she taught the second session English class from 2:00 p.m. to approximately 3:10 p.m.  <u>See</u> Davies Depo, Exhibit B at 60:13-15, 64:1-25, 65:1-10.

**Counter-statement**

21.     Plaintiff objects to the slanted characterization and refers to the deposition transcript for a full and accurate description with respect to paragraph 21.

**Statement**

22.     When Plaintiff returned from FMLA leave, she continued to receive her regular salary.  <u>See</u> Davies Depo., Exhibit B at 67:1-2; 68:1-5.

**Counter-statement**

22.     Plaintiff objects to the slanted characterization and refers to the deposition transcript for a full and accurate description with respect to paragraph 22.

**Statement**

23.     Other teachers at EBA, and not just Plaintiff, taught classes in the cafeteria, locker room, and library.  <u>See</u> Davies Depo., Exhibit B at 62:11-20; 81:14-23; 83:7-24; 162:16-17.

**Counter-statement**

23.      Plaintiff objects to the slanted characterization and refers to the deposition transcript for a full and accurate description with respect to paragraph 23.

**Statement**

24.     Plaintiff was one of four teachers assigned to teach second session classes.  <u>See</u> Davies Depo, Exhibit B at 62:14-20.

**Counter-statement**

23.     Plaintiff objects to the slanted characterization and refers to the deposition transcript for a full and accurate description with respect to paragraph 24, and notes that she was forced to teach in the girls' locker room as well.

**Statement**

25.     Plaintiff complained about some of her students' behavior, and she does not know what disciplinary measures the EBA administration took regarding those students.  <u>See</u> Davies Depo, Exhibit B at 101:4 – 102:24.

**Counter-statement**

25.     Plaintiff objects to the slanted characterization and refers to the deposition transcript for a full and accurate description with respect to paragraph 25, as the other teachers taught second session in their own classrooms during the day.

**Statement**

26.     Certain students were removed from Plaintiff's classroom following her complaints of their behavior.  <u>See</u> Davies Depo, Exhibit B at 99:19-20; 106:2-3; 111:20-21.

**Counter-statement**

26.     Plaintiff objects to the slanted characterization and refers to the deposition transcript for a full and accurate description with respect to paragraph 26.

**Statement**

27.     On March 6, 2008, Assistant Principal Nichole Campbell conducted a formal observation of Plaintiff's English class and rated the lesson unsatisfactory. <u>See</u> Observation Report dated March 10, 2008, Exhibit I.

**Counter-statement**

27.     Plaintiff objects to the slanted characterization and refers to the deposition transcript for a full and accurate description with respect to paragraph 27, and notes that most disruptive students were not removed.

**Statement**

28.     In the observation report, Assistant Principal Campbell noted that Plaintiff did not follow the workshop lesson model used at EBA, that she failed to create opportunities for students to build critical thinking skills, did not leave enough time for students to practice the skills learned or to check the students' understanding of the lesson, and did not actively engage students in the lesson.  Id.

**Counter-statement**

28.     Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author in paragraph 28.

**Statement**

29.     In her class observation report, Assistant Principal Campbell requested that Plaintiff implement the recommendations for improvement listed in her report as well those discussed in the post-observation conference held on March 10, 2008 in order to improve the process of teaching and learning inside plaintiff's classroom.  Id.  Assistant Principal Campbell had attached to the class observation report a Lesson Plan Template that outlined the model used at EBA, and notified Plaintiff that one of the school administrators would once again observe her class on March 13, 2008, which would be preceded by a pre-observation conference.  Id.

**Counter-statement**

29.    Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author in paragraph 29.

**Statement**

30.    On or about March 12, 2008, Plaintiff submitted a response to Assistant Principal Campbell's classroom observation.  <u>See</u> Plaintiff's response to Assistant Principal Campbell's class observation report, dated March 12, 2008, Exhibit J.  In her response, Plaintiff stated that she did not think that her class was unsatisfactory, but noted that she did not disagree that "there was room for improvement" in her lesson.  <u>Id</u>.  Moreover, Plaintiff did not suggest that she was having any difficulties with the workshop lesson model or the particular students in her classroom and in fact stated that she thought it was clear that her students liked her and that she thought she handled the outbursts from her students well.  <u>Id</u>.

**Counter-statement**

30.    Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author in paragraph 30.

**Statement**

31.    Assistant Principal Brendan Lyons conducted a formal observation of Plaintiff's English Language Arts class on March 13, 2008 and also found her lesson to be unsatisfactory.  <u>See</u> Observation Report dated March 14, 2008, Exhibit K.  Assistant Principal Lyons observed that while Plaintiff had prepared for the lesson, she did not organize her lesson in accordance with the skill based mini-lesson model utilized at EBA as she had been advised to do after her

last observation.  Id.  Assistant Principal Lyons also noted that Plaintiff again did not allot enough time for students to practice the skills they had learned and failed to incorporate techniques to encourage active engagement of the students.  Id.

### Counter-statement

31.      Plaintiff does not dispute the existence of the document but refers to the document itself for a true and accurate statement of its contents, and notes that she was not even informed of any "workshop model" as of this date.

### Statement

32.      Assistant Principal Lyons further noted that Plaintiff had not differentiated the lesson for different learning styles as had been suggested in the previous unsatisfactory observation report.  Id. Assistant Principal Lyons recommended that Plaintiff contact her union representative and enroll in the union's Peer Intervention Program ("PIP").[2]  Id.  Plaintiff did not submit a response to Assistant Principal Lyon's class observation.

### Counter-statement

32.      Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author in paragraph 32.

---

[2]      PIP is a program jointly developed by the DOE and the teacher's union, the United Federation of Teachers ("UFT"), designed for tenured teachers who are in need of significant instructional improvement and in danger of facing incompetence charges under section 3020-a of the New York Education Law.  See ¶ 94, infra.

33. Principal Scrogin conducted a formal observation of Plaintiff's lesson on March 20, 2008. <u>See</u> Observation Report dated March 24, 2008, Exhibit L. Principal Scrogin noted that Plaintiff continued to fail to teach a skill based mini-lesson as she had been instructed to do in previous observation reports. <u>Id</u>. Principal Scrogin also observed deficiencies in Plaintiff's planning and time management, noting that plaintiff failed to take time to make sure that students understood the lesson before allowing them to work independently. <u>Id</u>. Principal Scrogin also concurred with the Assistant Principals' observations that Plaintiff had failed to engage her students in the learning process. <u>Id</u>.

**Counter-statement**

33. Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author in paragraph 33.

**Statement**

34. To help Plaintiff improve in the classroom, Principal Scrogin recommended that Plaintiff observe lessons of other teachers in the English department, seek help from EBA's instructional coach, and enroll in the union's PIP program. <u>Id</u>. In her class observation report, Principal Scrogin requested that Plaintiff implement the recommendations for improvement listed in her report and notified Plaintiff that one of the school administrators would once again observe her class in the coming week. <u>Id</u>.

**Counter-statement**

34. Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author in paragraph 34.

**Statement**

35.     Plaintiff did not enroll in the PIP program in the 2007-2008 school year.  <u>See</u>

Davies Depo., Exhibit B at 158:1-10; 164:20-24.

**Counter-statement**

35.     Plaintiff does not dispute the existence of the document but does not agree with

the self-serving characterizations written by the document's author in paragraph 35.

**Statement**

36.     Principal Scrogin conducted another formal observation of Plaintiff's lesson on

April 8, 2008 and found it to be unsatisfactory.   <u>See</u> Observation Report, dated May 12, 2008,

Exhibit M.   In her observation report, Principal Scrogin noted that Plaintiff continued to

demonstrate problems with implementing the skill based mini-lesson model, planning and time

management, and engaging her students.  <u>Id</u>.

**Counter-statement**

36.     Plaintiff does not dispute the existence of the document but does not agree with

the self-serving characterizations written by the document's author in paragraph 36.

**Statement**

37.     On May 6, 2008, Assistant Principal Campbell conducted another formal

observation of Plaintiff's class.   <u>See</u> Observation Report dated May 6, 2008, Exhibit N.

Assistant Principal Campbell observed that Plaintiff was not effectively implementing the skill

based mini-lesson model as she had been advised to do.  <u>Id</u>.  Assistant Principal Campbell also

observed that Plaintiff failed to engage students in the lesson and did not effectively use the other teacher assigned to the class.  <u>Id</u>.  She rated the lesson unsatisfactory.  <u>Id</u>.

## Counter-statement

37.     Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author in paragraph 37.

## Statement

38.     On June 23, 2008, Assistant Principal Lyons informally observed Plaintiff's first period class and found the lesson to be unsatisfactory because when Assistant Principal Lyons entered the classroom Plaintiff was showing a violent film, rather than engaging the students.  <u>See</u> Observation Report, dated June 23, 2008, Exhibit O.  Assistant Principal Lyons wrote a letter to Plaintiff's file summarizing his observations.  <u>Id</u>.

## Counter-statement

38.     Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author in paragraph 38.

## Statement

39.     On June 23, 2008, Principal Scrogin and Assistant Principal Lyons met with Plaintiff and her union representative to discuss her unsatisfactory coverage of a 7th grade English class during her assignment as a replacement for a teacher on maternity leave.  <u>See</u> Principal Scrogin's letter dated June 25, 2008, Exhibit P.

**Counter-statement**

39.     Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author in paragraph 39, and notes that the film being shown was appropriate and within school guidelines and common practice during that time of the school year.

**Statement**

40.     During this meeting, Principal Scrogin informed Plaintiff that several teachers and staff members had reported to Principal Scrogin that they had to respond to Plaintiff's class to settle the students.  Id.  Further, Principal Scrogin notified Plaintiff that on June 19, 2008, she observed that Plaintiff made no attempt to teach the students, but rather showed students a movie during class time.  Id.  By letter dated June 25, 2008, Principal Scrogin informed Plaintiff that she was unsatisfactory in her coverage of the 7th grade English class.  Id.

**Counter-statement**

40.     Plaintiff does not dispute the existence of the letter or the meeting but does not agree with the self-serving characterizations written by the letter's author in paragraph 40, and notes that she was not given lesson plans for that class.

**Statement**

41.     At the end of the 2007-2008 school year, Plaintiff received an overall rating of unsatisfactory for her annual performance evaluation.  See Plaintiff's 2007-2008 Annual Performance Rating, Exhibit Q.  This unsatisfactory performance evaluation was supported by eight documents: 1) Certified Letter re: time, attendance and performance dated November 20,

2001; 2) Signed Letter for receipt of the handbook dated January 20, 2008; 3) Unsatisfactory Observation Report and Response dated March 10, 2008; 4) Unsatisfactory Observation Report dated March 14, 2008; 5) Unsatisfactory Observation Report dated March 24, 2008; 6) Unsatisfactory Observation Report dated March 14, 2008 dated April 8, 2008; 7) Unsatisfactory Observation Report dated May 6, 2008; 8) Unsatisfactory Observation Report dated June 23, 2008. Id.

**Counter-statement**

41.     Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author in paragraph 41.

**Statement**

42.     Because Plaintiff's performance in the classroom had not improved, Principal Scrogin held a preparation meeting for an action plan on June 23, 2008. See Action Plan dated June 26, 2008, Exhibit R. At the meeting, Principal Scrogin, Assistant Principal Lyons, plaintiff and Plaintiff's UFT representative Mike Morel discussed a plan of action to improve Plaintiff's performance the next school year and created an Action Plan for her. Id.

**Counter-statement**

42.     Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author in paragraph 42.

**Statement**

43.     The Action Plan set forth goals for Plaintiff in five areas: (1) instructional management; (2) classroom management; (3) creating and maintaining a positive learning

environment; (4) lesson planning and preparation; and (5) professional responsibilities.  Id. During the action plan meeting, Plaintiff asked to receive professional development on classroom management and technology, specifically on learning to use power point and smart board, and it was agreed that she would be provided with training in those areas. Id.

**Counter-statement**

43.     Plaintiff does not dispute the existence of the document or the meeting but does not agree with the self-serving characterizations written by the document's author in paragraph 43.

**Statement**

44.     Plaintiff agreed to the Action Plan and its recommendations by signing the Action Plan on June 26, 2008.  Id.

**Counter-statement**

44.     Plaintiff does not dispute the existence of the document or the meeting but does not agree with the self-serving characterizations written by the document's author in paragraph 44.

**C.     2008-2009 School Year**

**i.     Student Complaints And Other Disciplinary Matters**

**Statement**

45.     After the start of the 2008-2009 school year, Plaintiff's students J.C.[3] and A.D. complained to the EBA administration about Plaintiff's teaching.  See Assistant Principal Luke Bauer's letter to Plaintiff dated September 18, 2008 and the students' complaints about Plaintiff's classroom, Exhibit S.  The students complained that they were not learning anything in Plaintiff's classes because plaintiff was not organized, and that her attempt at instruction was to have the students copy information into their notebooks.  Id.

### Counter-statement

45.     Plaintiff disputes paragraph 45 but acknowledges that she signed a document entitled Action Plan.


### Statement

46.     On September 18, 2008, Principal Scrogin and Assistant Principal Bauer met with Plaintiff and her union representative to discuss the students' complaints. See Assistant Principal Luke Bauer's letter to Plaintiff dated September 18, 2008, Exhibit S.  Assistant Principal Bauer reminded Plaintiff of the goals in her Action Plan concerning differentiated instruction and student engagement.  Id.

### Counter-statement

46.     Plaintiff does not dispute the existence of the letter referenced in paragraph 46 but does not have sufficient knowledge or information to know what the students reported.

---

[3]     In the supporting exhibits, the full names of the students referred hereto have been redacted to protect their identity.

**Statement**

47.     On October 14, 2008, Principal Scrogin held a disciplinary conference with Plaintiff and her union representative to discuss Plaintiff's failure to immediately report to the administration that a student had accessed a pornographic website on one of the school's computer.  See Principal Scrogin's letter to Plaintiff dated October 14, 2008, Exhibit T.  The incident had taken place during Plaintiff's fourth period class, which ran from 12:00 to 12:45. Id.  Plaintiff, however, did not report the incident until after 3:00.  Id.  By letter dated October 14, 2008, Plaintiff was advised to report such disciplinary incidents immediately to the school administration.  Id.

**Counter-statement**

47.     Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 47 but does not agree with the self-serving characterizations written by the document's author in paragraph 47.

**Statement**

48.     During the October 14, 2008 disciplinary conference, Principal Scrogin also discussed with Plaintiff a written complaint she had received from a student that was also signed by several other students.  See Principal Scrogin's letter to Plaintiff dated October 14, 2008, and the students' complaint, Exhibit U.  The students' complaint stated that Plaintiff's class was confusing, that Plaintiff did not have lesson plans, and that she did not respond to students when they raised their hands.  Id.

**Counter-statement**

48.    Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 48 but does not agree with the self-serving characterizations written by the document's author in paragraph 48, and notes that she reported the student misbehavior verbally at the time it occurred to a school security guard.

**Statement**

49.    Principal Scrogin advised Plaintiff that she was not meeting the needs of her students.  Id.  In response, Plaintiff claimed that her teaching was impaired by students who she claimed were being disruptive. Id. Principal Scrogin advised Plaintiff that "[i]f students are disruptive by getting up out of their seats, circulating letters or petitions, rolling on the floor or being otherwise noisy or loud, please follow the Ladder of Referral in our Staffulty Handbook and contact parents, assign detention, and, ultimately if necessary, refer the student to the dean .... You absolutely may not allow the type of disruptive behavior you described to me to continue to derail your instruction." Id.

**Counter-statement**

49.    Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 49 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

50.    The third issue discussed during the October 14, 2008 conference concerned information Principal Scrogin received from Abraham Sabek, another teacher, that Plaintiff had

been releasing kids from class early.  <u>See</u> Principal Scrogin's letter to Plaintiff dated October 14, 2008 and the teacher's e-mail, Exhibit V.  Sabek complained that Plaintiff released her students early, which resulted in unsupervised students walking around in the hallway disrupting instruction in other classes.  <u>Id</u>.  When Principal Scrogin informed Plaintiff about the other teacher's complaint, Plaintiff indicated to Principal Scrogin that she liked to release the students early to clean up the classroom.  <u>Id</u>.  Principal Scrogin advised Plaintiff that by dismissing students from class early she was in dereliction of her teaching duties.  <u>Id</u>.

<b>Counter-statement</b>

50.    Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 50 but does not agree with the self-serving characterizations written by the document's author.

<b>Statement</b>

51.    Three days later, on October 17, 2008, Principal Scrogin met with Plaintiff and her union representative to discuss an anonymous complaint that had been made to the New York City 311 call center on October 16, 2008.  <u>See</u> Principal Scrogin's letter to Plaintiff dated October 28, 2008 and the accompanying report, Exhibit W.  The caller stated that Plaintiff had no control over her classroom, did not help her students, and was incompetent.  <u>Id</u>.  During this meeting, Principal Scrogin urged Plaintiff to follow the school's Ladder of Referral and call students' parents when she encountered discipline problems.  <u>Id</u>.

**Counter-statement**

51.     Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 51 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

52.     On or around October 24, 2008, Plaintiff reported to Assistant Principal Bauer that student J.T. touched her and made sexually inappropriate gestures to her by thrusting his pelvis.  See Office of Special Investigations, Corporal Punishment Intake Form dated October 24, 2008, Exhibit X.  During the next period, Plaintiff told this to NYPD Officer Beaumont of the 42nd precinct, who happened to be in the building on another matter. During the subsequent NYPD investigation, three students told Principal Scrogin and Officer Beamont that Plaintiff pushed J.T.  Id.  After speaking to another teacher and to several other students, NYPD concluded that no criminal activity had taken place on the part of J.T.  Id. In light of the three students' reports to Principal Scrogin and Officer Beaumont that Plaintiff pushed  J.T., Principal Scrogin prepared a corporal punishment intake form and submitted it to the Office of Special Investigations.  Id.

**Counter-statement**

52.     Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 52 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

53.     On or about November 5, 2008, Assistant Principal Luke Bauer informed Plaintiff that he would like to meet with Plaintiff and her union representative on November 7, 2008 to investigate the allegation that Plaintiff had pushed J.T.  <u>See</u> Assistant Principal Bauer's letter to Plaintiff dated November 5, 2008, Exhibit Y.

**Counter-statement**

53.     Plaintiff does not dispute paragraph 54 to the extent that she filed a report against a student and then was retaliated against by the principal by having a report filed by the principal against her, which, upon information and belief, was ultimately unsubstantiated.

**Statement**

54.     On November 7, 2008, Assistant Principal Bauer held a disciplinary conference with Plaintiff and her union representative to discuss complaints made by three students who had asked to be switched out of plaintiff's English class.  <u>See</u> Assistant Principal Bauer's letters to Plaintiff dated November 7, 2008, Exhibit Z.  The students complained that they were not learning anything in Plaintiff's class.  <u>Id</u>.  Specifically, student S.M. stated that he "would like [his] English class to be changed. Ms. Davies is really unorganized and sloppy. She really doesn't give work to do… She just hands out papers and that's that."  <u>Id</u>.  Another student in Plaintiff's class, A.R. stated that he "would like to be switched from Ms. Davies class. She is always accusing me of things I didn't do. Also I haven't learned one thing in her class so far." <u>Id</u>.  The third student, J.C. stated that " in Ms. Davies class I do not learn anything. Teachers are suppose to teach students she just gives us passages then we have to write about it."  <u>Id</u>.

**Counter-statement**

54.     Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 54 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

55.     In the resulting disciplinary letters to Plaintiff's file, Assistant Principal Bauer reminded Plaintiff that one of the goals in the Action Plan was to "immediately engage students at the onset of the lesson, observe proper protocols and routines, including using the elements of the EBA Lesson Template." Id.

**Counter-statement**

55.     Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 55 but does not agree with the self-serving characterizations written by the document's author, and lacks sufficient information and belief to know what the students actually reported.

**Statement**

56.     On November 12, 2008, another student, C.B., alleged that Plaintiff forcibly took her cell phone, which she grabbed back from Plaintiff. See Alleged Corporal Punishment and/or Verbal Abuse Report of Investigation, Victim and Witness Statements, Exhibit AA. After investigating the complaint, Assistant Principal Bauer found that the student should not have had her cell phone out and should not have grabbed it from Plaintiff. See Alleged Corporal

Punishment and/or Verbal Abuse Report of Investigation, Exhibit AA. He further concluded that plaintiff's contact with the student was incidental. Id.

### Counter-statement

56. Plaintiff does not dispute the existence of the letter referenced in paragraph 56 but does not agree with the self-serving characterizations written by the document's author.

### Statement

57. Principal Scrogin held another disciplinary conference with plaintiff on November 17, 2008. At this meeting, Principal Scrogin presented Plaintiff with letters written by three of Plaintiff's students who complained about her class and stated that they were not learning anything during the class. See Assistant Principal Bauer's letters to Plaintiff dated November 18, 2008 Concerning Student Complaints, Exhibits BB-DD.

### Counter-statement

57. Plaintiff does not dispute paragraph 57.

### Statement

58. One of her students complained that "Ms. Davies said shut up to the students! Ms Davies taped[sic] me on my shoulders. There was no brainstarter! (She gave it to us 15 min after class started). She taped[sic] me with a lot of force. She refuses to help students. Pushed[sic] the chair into my foot on purpose. She bumped [redacted]. She closed the door on [redacted] and her nail fell off." See Assistant Principal Bauer's letter to Plaintiff dated November 18, 2008 concerning a student's complaint, Exhibit BB.

**Counter-statement**

58.    Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 58 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

59.    The other student complained that "Ms. Davies is a very horrible teacher and I am not learning anything in her class. Also, she blame me for everything and when I'm doing my work she asks me to discuss it with a friend I do it.  Then she tells me to stop talking and do my work then I say that's what I'm doing the she start screeming[sic] at me for no apparent[sic] reason then she say I got detention. Also we do something everyday we do a Brainstarter then we read a newspaper. To me we are not learning anything. I hope you can change my elective. P.S. Ms. Davies never picks up my work."  <u>See</u> Assistant Principal Bauer's letter to Plaintiff dated November 18, 2008 concerning a student's complaint, Exhibit CC.

**Counter-statement**

59.    Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 59 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

60.    The third student complained that "Ms. Davies didn't give several students work to do for her class until 20 min after. No Brainstarter! Were not reading a story! Students do

work but she doesn't collect then says you didn't do the work." <u>See</u> Assistant Principal Bauer's letter to Plaintiff dated November 18, 2008 concerning a student's complaint, Exhibit DD.

**Counter-statement**

60.     Plaintiff does not dispute the existence of the letter referenced in paragraph 60 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

61.     Principal Scrogin and Assistant Principal Bauer wrote disciplinary letters to plaintiff's file concerning these three student complaints and once again noted that Plaintiff must differentiate her instruction and engage her students as she had agreed to in the Action Plan. <u>See</u> Exhibits BB-DD.

**Counter-statement**

61.     Plaintiff does not dispute the existence of the letter referenced in paragraph 61 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

62.     At the November 17, 2008 meeting, Principal Scrogin and Assistant Principal Bauer also discussed with Plaintiff a letter Principal Scrogin received from a large group of students. <u>See</u> Assistant Principal Bauer's letter to Plaintiff dated November 18, 2008 concerning students' complaint, Exhibit EE. The students' letter stated:

> To Whom It May Concern: I am writing to let you know that our teacher for English Theater is not teaching well. Ms. Davies doesn't teach like a teacher should. Ever since September we have been writing monologues, but she doesn't say what it is. She is also annoying and rude. Please take this under consideration.

30

**Counter-statement**

62.     Plaintiff does not dispute the existence of the letter referenced in paragraph 62 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

63.     At the November 17, 2008 meeting, Plaintiff was given a copy of the letter and acknowledged that this was from a large group of students.  <u>Id</u>.  Plaintiff's response to this letter was "They are ganging up against me."  <u>Id</u>.

**Counter-statement**

63.     Plaintiff does not dispute the existence of the meeting or letter referenced in paragraph 63 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

64.     Assistant Principal Bauer wrote a disciplinary letter to Plaintiff's file concerning this complaint noting that she must immediately engage students at the onset of the lesson, observe proper protocols and routines, including using the elements of the EBA Lesson template. <u>Id</u>.

**Counter-statement**

64.     Plaintiff does not dispute the existence of the meeting or letter referenced in paragraph 64 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

65.     At the November 17, 2008 meeting, Principal Scrogin and Assistant Principal Bauer also discussed with plaintiff her inappropriate use of her EBA e-mail account where she criticized another teacher for not coming to her aid when there was a problem in her class with one of her students.  See Assistant Principal Bauer's letter to Plaintiff dated November 18, 2008 concerning Plaintiff's inappropriate use of e-mail, Plaintiff's email to Sabrina Cook and Ms. Cook's response, Exhibit FF.

**Counter-statement**

65.     Plaintiff does not dispute the existence of the meeting or letter referenced in paragraph 65 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

66.     On November 9, 2008, Plaintiff sent an e-mail to Sabrina Cook, another teacher, asking her why she did not run to Plaintiff's aid when she heard her scream.  See Plaintiff's email to Sabrina Cook and Ms. Cook's response, Exhibit FF.

**Counter-statement**

66.     Plaintiff does not dispute the existence of the meeting or letter referenced in paragraph 66 but does not agree with the self-serving characterizations written by the document's author, and was not aware of any rule regarding use of the email in this manner.

**Statement**

67.     In response, Ms. Cook wrote that:

First of all, due to the fact that your classes are loud and unruly on a DAILY basis, I am forced to keep my door closed during fifth period so I am able to get work done. Therefore, I DID NOT hear you scream. Furthermore, if I had heard a scream, I would not have been alarmed because there are generally yells, screams, and other loud and horrible noises that come from the library when you are "teaching" in there…. If you engage the students, and actually teach them, this will help with your discipline problems. It is a bit disturbing that I feel I have to tell a veteran teacher this but my concern is that when I walk through the library I see very little teaching going on. The students are never engaged, and furthermore, they come to me and complain that they are not learning. Besides the lesson, an effective classroom has rules, routines, procedures, rewards, consequences, etc., none of which do I see evidenced in your classroom. See id. (emphasis in original).

## Counter-statement

67. Plaintiff does not dispute paragraph 67.

## Statement

68. Principal Scrogin advised Plaintiff during the November 17, 2008 meeting that she must not use her school e-mail address to criticize staff members and that she must follow the proper protocol whenever she needs assistance in the classroom, i.e., contacting an administrator or a member of the school's justice team. See Assistant Principal Bauer's letter to Plaintiff dated November 18, 2008 concerning Plaintiff's inappropriate use of e-mail, Exhibit FF.

## Counter-statement

68. Plaintiff does not dispute paragraph 68, but does not agree with the contents of the response, and notes that Ms. Cook was not disciplined for inappropriate use of email.

### Statement

69.     During the November 17, 2008 meeting, Principal Scrogin and Assistant Principal Bauer also discussed with Plaintiff two issues that had come to their attention through other school staff.  The first issue was the allegation that Plaintiff had slammed a school laptop computer on a table.  <u>See</u> Assistant Principal Bauer's letter to Plaintiff dated November 18, 2008 concerning Plaintiff's use of laptop, Sabrina Cook's statement, Plaintiff's E-Mail, Exhibit GG. The second issue was Plaintiff's failure to report a suspected theft of her school issued laptop for two days.  <u>See</u> Principal Scrogin's letter to Plaintiff dated November 26, 2008 concerning Plaintiff's loss of the school laptop, Exhibit HH.

### Counter-statement

69.     Plaintiff does not dispute the existence of the meeting or letter referenced in paragraph 69 but does not agree with the self-serving characterizations written by the document's author, and was not aware of any rule regarding use of the email in this manner.

### Statement

70.     On December 3, 2008, another student R.V. complained that Plaintiff, while trying to stop her from leaving the classroom, closed the door on her foot, causing her nails to fall off.  <u>See</u> Alleged Corporal Punishment and/or Verbal Abuse Report of Investigation, dated December 3, 2008, Exhibit II.

### Counter-statement

70.     Plaintiff does not dispute the existence of the meeting or letter referenced in paragraph 70 but does not agree with the self-serving characterizations written by the

document's author, and did not deliberately slam any laptop computer on a table, and the laptop was timely reported.

### Statement

71.     On December 10, 2008, Principal Scrogin and Assistant Principal Bauer held another disciplinary conference with Plaintiff to discuss several issues that had arisen with her students.

### Counter-statement

71.     Plaintiff does not dispute the existence of the letter referenced in paragraph 72 but does not agree with the self-serving characterizations written by the document's author, and denies that she did as alleged.

### Statement

72.     The first issue discussed at the December 10, 2008 disciplinary conference concerned an allegation made by R.V. that Plaintiff had choked her.  See Principal Scrogin and Assistant Principal Bauer's letter dated December 12, 2008 concerning R.V.'s allegation, R.V's statement and two other students' statements, see Alleged Corporal Punishment and/or Verbal Abuse Report Of Investigation, Exhibit JJ.  Assistant Principal Bauer investigated the allegation and found that while Plaintiff did not choke the student, she extended her arm out in front of the student to prevent her from leaving the classroom and made contact with her.  See Principal Scrogin and Assistant Principal Bauer's letter dated December 12, 2008 concerning R.V.'s allegation, Exhibit JJ.  In a letter to Plaintiff's file, Principal Scrogin and Assistant Principal

Bauer advised plaintiff that she exercised poor judgment by extending her arm in front of the student and instructed her to stop making physical contact with students. Id.

### Counter-statement

72. Plaintiff does not dispute the existence of the meeting referenced in paragraph 72 but does not agree with the self-serving characterizations written by the document's author.

### Statement

73. The next issue concerned Plaintiff's report that one of her students, A.R. had thrown paper during class. See Principal Scrogin and Assistant Principal Bauer's letter dated December 10, 2008 concerning A.R., Exhibit KK. Principal Scrogin advised Plaintiff that the student would be switched out of her class due to a concern that he was at risk of failing, but noted that the behavioral incident could have been avoided with better classroom management by Plaintiff. Id. Principal Scrogin encouraged Plaintiff to reach out to parents and maintain a dialogue with them about their children's progress and behavior issues. Id.

### Counter-statement

73. Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 73 but does not agree with the self-serving characterizations written by the document's author.

### Statement

74. The second issue discussed at the meeting concerned a report made by a school dean that Plaintiff claimed that two of her students were stalking her and that one of the students had videotaped the other simulating a sexual act toward plaintiff. See Principal Scrogin and

Assistant Principal Bauer's letter dated December 10, 2008 regarding Plaintiff's complaint, and Plaintiff's complaint, Exhibit LL. Principal Scrogin explained that the dean and the school safety agent had reviewed the video Plaintiff complained about and found no evidence of what she had described. Id.

### Counter-statement

74. Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 74 but does not agree with the self-serving characterizations written by the document's author.

### Statement

75. The third issue discussed at the meeting concerned an incident where one of Plaintiff's students input information into a library computer which prompted the computer to "speak" obscene messages aloud while the class was in session. See Principal Scrogin and Assistant Principal Bauer's letter dated December 10, 2008 concerning student misuse of computers, and statements regarding the incident, Exhibit MM. Principal Scrogin advised Plaintiff that she had directed the technology coordinator to add new passwords to the library computers to avoid this kind of occurrence in the future. Id. Principal Scrogin did, however, urge Plaintiff to take steps to improve her classroom management skills. She encouraged Plaintiff to observe three other teachers who exercise exemplary classroom management as a model and again reminded her to make contact with students' parents. Id.

**Counter-statement**

75.    Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 75 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

76.    Assistant Principal Bauer held another disciplinary conference with Plaintiff on December 19, 2008 to address other issues that had arisen.  <u>See</u> Assistant Principal Luke Bauer's letter to Plaintiff dated December 12, 2008, Exhibit NN.  The first issue discussed was plaintiff's failure to enter students' grades into the school's "Gradebook Wizard."  <u>See</u> Assistant Principal Luke Bauer's letter to Plaintiff dated December 19, 2008 Regarding Student Grades, Exhibit OO. Assistant Principal Bauer advised Plaintiff that she must submit grades so that parents, students, guidance, and administration can collaboratively work together to ensure students' success.  <u>Id</u>.

**Counter-statement**

76    Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 76, or that she made a report, but does not agree with the self-serving characterizations written by the document's author.

**Statement**

77.    Assistant Principal Bauer also discussed with Plaintiff the fact that several teachers had complained that students were being transferred out of Plaintiff's classes because of her inability to manage her classroom, which resulted in their classes becoming overloaded.  <u>See</u> Assistant Principal Luke Bauer's letter to Plaintiff dated December 19, 2008 Concerning Teacher

Complaints, and teachers' e-mails about plaintiff, Exhibit PP.   Attached to this letter were several emails written by Plaintiff's fellow teachers expressing frustration with Plaintiff's inability to control her classes.  Id.

**Counter-statement**

77     Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 77 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

78.     On January 30, 2009 Assistant Principal Bauer met with Plaintiff to discuss a number of written complaints students had made to the administration about Plaintiff.  See Assistant Principal Luke Bauer's letters to Plaintiff dated February 2, 2009 and the students' statements complaining about Plaintiff, Exhibit QQ.  The students reported that Plaintiff assigned the same work every day, kicked students out of class for minor infractions, and inappropriately asked a female student who was sick to her stomach whether she was pregnant.  In one of the three letters to Plaintiff's file dated February 2, 2009, Bates No. DOE 00495 – DOE 00496, Assistant Principal expressed his concern that Plaintiff was repeatedly engaged in negative interactions with students and therefore not able to build positive relationships with students as a teacher should.  Id.

**Counter-statement**

78     Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 78 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

79.     A final disciplinary conference was held with Plaintiff and her union representative on March 17, 2009 regarding Plaintiff's ongoing problems with classroom management.  On March 5, 2009, while Plaintiff was covering for the physical education teacher, Plaintiff failed to prevent and stop the students from playing a "Blacks vs. Latinos" game of dodgeball.  <u>See</u> Assistant Principal Bauer's Letter to Plaintiff dated March 18, 2009 concerning Dodgeball Incident, and teacher's emails about the incident, Exhibit RR.  Because Plaintiff failed to prevent the racially charged incident,  tension among the students rose, and a fight between two students ensued that resulted in their suspensions the following week.  <u>Id</u>.  Thereafter, the administration and the New York City Police Department arranged a presentation at the school on bullying and racial violence.  <u>Id</u>.

**Counter-statement**

79.     Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 79 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

80.     The second incident discussed at the Mach 17, 2009 conference took place during Plaintiff's March 10, 2009 English Theater class.  <u>See</u> Assistant Principal Bauer's Letter to Plaintiff dated March 18, 2009 Concerning Students Microwaving Textbooks, Exhibit SS.  During this class, which was held in the school's cafeteria, six students were observed microwaving textbooks and Plaintiff was unable to control their behavior.  <u>Id</u>.  In disciplinary letters to Plaintiff's file, Assistant Principal Bauer advised Plaintiff to visit the classrooms of

some of her colleagues to observe effective classroom management and reminded her of the classroom management goals set forth in her Action Plan.  Id.

**Counter-statement**

80.     Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 80 but does not agree with the self-serving characterizations written by the document's author.

### ii. Plaintiff's Classroom Observations And Plaintiff's Failure to Comply   With The Action Plan

**Statement**

81.     From the commencement of the 2008-2009 school year, Plaintiff continually failed to submit her lesson plans to Assistant Principal Bauer on a daily basis as required by the Action Plan.  Assistant Principal Bauer wrote seven letters to Plaintiff reminding her of this requirement and instructing Plaintiff to begin submitting her lesson plans to him.  See Letters from Assistant Principal Bauer to Plaintiff dated September 17, 2008, September 26, 2008, October 15, 2008, October 31, 2008, November 14, 2008, December 12, 2008, December 22, 2008, concerning Plaintiff's failure to submit lesson plans, Exhibit TT.

**Counter-statement**

81.     Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 81 but does not agree with the self-serving characterizations written by the document's author.  Specifically, the students attempted to microwave textbooks in a classroom with a microwave, and Plaintiff immediately stopped it and reported the students' misbehavior to school administration.

**Statement**

82.     Plaintiff repeatedly ignored Assistant Principal Bauer's instructions. <u>Id</u>. When questioned about why she failed to submit lesson plans, Plaintiff testified that it took "a long time to do it" and that she "couldn't give a detailed lesson plan in advance" because she did not know "how long the students would take to get through the material." <u>See</u> Davies Depo., Exhibit B at 178:3-4; 180:1-9.

**Counter-statement**

82.     Plaintiff does not dispute the existence of the letter referenced in paragraph 82 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

83.     On September 5, 2008, Principal Scrogin and Assistant Principal Bauer observed Plaintiff's class. <u>See</u> Assistant Principal Bauer's class observation report, dated September 5, 2008, Exhibit UU. In his observation report, Assistant Principal Bauer noted that Plaintiff failed to teach a skill based mini-lesson, did not engage all of the students in the lesson and activities, and failed to differentiate instruction for the varying ability levels of the students. <u>Id</u>.

**Counter-statement**

83.     Plaintiff objects to the slanted characterization and refers to the deposition transcript for a full and accurate description with respect to paragraph 83.

**Statement**

84.     On September 12, 2008, Assistant Principal Bauer conducted an informal observation of Plaintiff's first period class and observed several problems with Plaintiff's lesson.

See Assistant Principal Bauer's class observation report dated September 12, 2008, Exhibit VV. In his class observation report, Assistant Principal Bauer reminded plaintiff of the instructional management goals set forth in her Action Plan and identified four concerns: (1) he saw no evidence that Plaintiff had taught and modeled a new skill; (2) he saw no evidence that students had been instructed how to practice a new skill; (3) he did not see Plaintiff monitoring students' progress or checking their understanding; and (4) the academic rigor of the lesson was too low for the students.  Plaintiff received an unsatisfactory rating for this informal class observation. Id.

**Counter-statement**

84.    Plaintiff does not dispute the existence of the letter referenced in paragraph 84 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

85.    Assistant Principal Bauer formally observed one of Plaintiff's classes on September 22, 2008 and found her lesson unsatisfactory.  See Assistant Principal Bauer's class observation report dated September 22, 2008, Exhibit WW.  In his observation report, Assistant Principal Bauer noted that Plaintiff again had not adhered to the skill based mini-lesson model. Id.  He explained in his observation report that because many of the students struggle with reading, they needed a teacher who models good reading strategies through the mini-lesson, and that Plaintiff had failed to model this for the students.  Id.  Assistant Principal Bauer also noted that plaintiff did not check for students' understanding of the lesson and failed to engage the students and effectively manage their behavior in the classroom. Id.

**Counter-statement**

85.     Plaintiff does not dispute the existence of the letter referenced in paragraph 85 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

86.     On October 7, 2008, Principal Scrogin conducted an informal observation of Plaintiff's class.   See Principal Scrogin's class observation report dated October 14, 2008, Exhibit XX.   In her observation report, she noted that Plaintiff failed to utilize the skill based mini-lesson model and did not check students' understanding of the lesson before moving on to the practice portion of the lesson.   Id.

**Counter-statement**

86.     Plaintiff does not dispute the existence of the letter referenced in paragraph 86 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

87.     Principal Scrogin conducted another informal observation of Plaintiff's fourth period English class on October 17, 2008 and found it unsatisfactory. See Principal Scrogin's class observation report dated October 21, 2008, Exhibit YY.   In her observation report, Principal Scrogin explained that she had chosen that particular class to observe because students and staff members had indicated to her that there were behavior management issues in the class. Id.   Again, in the observation report, Principal Scrogin noted that Plaintiff was not effectively implementing the mini-lesson structure and modeling a skill for the students to apply.   Id.

**Counter-statement**

87.     Plaintiff does not dispute the existence of the letter referenced in paragraph 87 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

88.     Principal Scrogin further noted that Plaintiff also failed to properly check for students' understanding of the lesson, and attached a sheet to the report with other ideas regarding how to assess students' understanding.  Id.  Finally, Principal Scrogin wrote that Plaintiff did not effectively manage students' behavior during the class.  Id.

**Counter-statement**

88.     Plaintiff does not dispute the existence of the letter referenced in paragraph 88 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

89.     On October 20, 2008, Assistant Principal Bauer conducted an informal observation of Plaintiff's first period English class. See Assistant Principal Bauer's class observation report dated November 20, 2008, Exhibit ZZ.  In his observation report, Assistant Principal Bauer noted that despite having repeatedly instructed Plaintiff to teach a skill based mini-lesson each day in which she models a skill for the students to implement, Plaintiff failed to do so.  Id.  Assistant Principal Bauer also reported that Plaintiff's lesson did not engage that students, noting that a number of students complained to him that they were not learning anything in her class, and observed that Plaintiff did not provide clear instructions for her students.  Id.

89.     Plaintiff does not dispute the existence of the letter referenced in paragraph 89 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

90.     Assistant Principal Bauer again observed Plaintiff on November 20, 2008. <u>See</u> Assistant Principal Bauer's class observation report dated November 20, 2008, Exhibit AAA.  At a meeting with Plaintiff the following day and in his written report, Assistant Principal Bauer noted four areas of concern related to Plaintiff's instructional management: (1) failure to teach mini-lessons; (2) failure to model skills for the students; (3) presenting work that is not challenging enough for students; and (4) giving students confusing directions.  <u>Id</u>.  Assistant Principal Bauer again encouraged Plaintiff to visit the classrooms of some other colleagues for observation and reminded her of the goals identified in the Action Plan.  <u>Id</u>.

**Counter-statement**

90.     Plaintiff does not dispute the existence of the letter referenced in paragraph 90 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

91.     On December 19, 2008, Principal Scrogin conducted a formal observation of Plaintiff's class.  <u>See</u> Principal Scrogin's class observation report dated December 19, 2008, Exhibit BBB.  During the observation, Principal Scrogin observed that only four out of 18 students showed up for class and that Plaintiff  were completely unprepared to teach.  <u>Id</u>.

Principal Scrogin noted that Plaintiff had no lesson plan and had not chosen independent reading books for the students. In her report, Principal Scrogin stated:

> In my supervisory judgment you showed absolutely no resourcefulness and initiative. The bare minimum requirement for a pedagogue is to have a lesson plan and to prepare for her students by reviewing their class materials before the class starts. It is unacceptable that you, a tenured, professional teacher employed by the New York City Department of Education, had not done this. <u>Please be aware, as a condition of your contract of employment with the Department of Education, you must be prepared by writing a lesson plan and reviewing the course materials for every single one of the periods that you teach!</u>
> <u>Id</u>. (emphasis in original)

### Counter-statement

91. Plaintiff does not dispute the existence of the letter or meeting referenced in paragraph 91 but does not agree with the self-serving characterizations written by the document's author.

### Statement

92. Principal Scrogin also noted that the topic Plaintiff had based her classroom activity on - holiday gift giving - was insensitive and failed to take into account her students' current situation, all of whom live in extremely impoverished conditions. <u>See</u> <u>id</u>. Principal Scrogin also wrote in her class observation report that Plaintiff failed to engage the students and did not differentiate what little instruction she presented to the varying needs of the students. <u>Id</u>. Principal Scrogin reported that Plaintiff failed to teach a skill based mini-lesson and model a specific skill as she is required to do as a teacher at EBA. <u>See</u> <u>id</u>.

92.     Plaintiff does not dispute the existence of the letter referenced in paragraph 92 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

93.     On December 19, 2008, Principal Scrogin wrote Plaintiff a letter recommending that she participate in PIP Plus, a program jointly developed by the DOE and the teacher's union, the United Federation of Teachers ("UFT"), designed for tenured teachers who are in need of significant instructional improvement and in danger of facing incompetence charges under section 3020-a of the New York Education Law. <u>See</u> Principal Scrogin's letter dated December 19, 2008 about PIP Plus, Exhibit CCC.

**Counter-statement**

93.     Plaintiff does not dispute the existence of the letter referenced in paragraph 93 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

94.     In her letter, Principal Scrogin explained to Plaintiff that PIP Plus program is run by a third-party vendor agreed to by the DOE and the UFT with expertise in professional development and assessment of teacher performance. <u>Id</u>. She further explained to Plaintiff that during her participation in the program, a neutral consultant from the third-party vendor would observe her, develop a plan for improvement, and conference with Principal Scrogin and Plaintiff separately regarding areas of need, plans for improvement, methods of assistance and assessment of progress. <u>Id</u>. Principal Scrogin further advised Plaintiff that the observation period would last for a minimum of three months, during which time Plaintiff's school

supervisors would also continue conducting observations and providing feedback to her.  Id.  She further informed Plaintiff that the observer would help her develop a plan for improvement which will be tailored to her specific needs.  Id.

## Counter-statement

94.    Plaintiff does not dispute the existence of the letter referenced in paragraph 94 but does not agree with the self-serving characterizations written by the document's author.

## Statement

95.    Plaintiff agreed to participate in this program.  Id. at p.2.

## Counter-statement

95.    Plaintiff does not dispute the existence of the letter referenced in paragraph 95 but does not agree with the self-serving characterizations written by the document's author.

## Statement

96.    Principal Scrogin conducted her first formal observation of the second semester on January 12, 2009 and held a post-observation conference with Plaintiff regarding this observation on January 14, 2009.  See Principal Scrogin's letter dated January 14, 2009, Exhibit DDD.

## Counter-statement

96.    Plaintiff disputes paragraph 96 to the extent that she was misled about the nature and intentions of the PIP Plus program as a tool to be used against teachers at their subsequent Section 3020-a hearings.

**Statement**

97. Principal Scrogin's observation report for Plaintiff's January 12, 2009 class observation noted that Plaintiff: (1) continued to have problems with implementation of the mini-lesson model; (2) based her lesson on a topic that was not appropriate for the impoverished students in her class - world travel; (3) failed to manage the students' behavior in class and took no action when students spoke about inappropriate topics; (4) did not address the goal identified in her lesson plan; (5) failed to differentiate her lesson for all of the students in attendance; (6) did not insure that students participated in class; (7) did not record students' attendance or make note of when certain students left the classroom; and (8) showed no evidence that she was keeping track of students' progress. <u>See</u> Principal Scrogin's class observation report dated, January 20, 2009, Exhibit EEE.

**Counter-statement**

97. Plaintiff does not dispute the existence of the letter referenced in paragraph 97 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

98. Principal Scrogin advised Plaintiff that Assistant Principal Bauer would prepare a mandatory observation schedule for her to follow so that she would visit classes of her colleagues in the English department and see proper implementation of instructional methods and techniques. <u>See</u> <u>id</u>.

**Counter-statement**

98.     Plaintiff does not dispute the existence of the letter referenced in paragraph 98 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

99.     When presented with the observation schedule that Assistant Principal Bauer had prepared, Plaintiff refused to sign it.  See Assistant Principal Bauer's Peer Observation Schedule dated January 20, 2009, Exhibit FFF.

**Counter-statement**

99.     Plaintiff does not dispute the existence of the letter referenced in paragraph 99 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

100.    Michael Elias, the peer observer assigned to Plaintiff through the PIP Plus program conducted observations of Plaintiff on January 14, 2009, January 22, 2009, February 4, 2009, February 24, 2009, March 16, 2009, and March 23, 2009. See Michael Elias' class observation reports dated January 16, 2009, January 27, 2009, February 13, 2009, March 1, 2009, March 17, 2009 and April 2, 2009, Exhibit GGG.

**Counter-statement**

100.    Plaintiff does not dispute the existence of the letter referenced in paragraph 100 but does not agree with the self-serving characterizations written by the document's author.

101.     The peer observer also met with Plaintiff on February 13, 2009 to teach her how to use smart board, a request made by Plaintiff in her action plan for the year.  See Letter of Michael Elias to Plaintiff dated January 28, 2009, Exhibit HHH.

**Counter-statement**

101.     Plaintiff does not dispute the existence of the observations or meetings referenced in paragraph 101 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

102.     In his write-ups of the observations, the peer observer reported that Plaintiff: (1) did not effectively engage students in her lessons; (2) failed to plan and implement lessons that had a clear aim and that taught students a specific skill; (3) did not employ an effective questioning technique and instead asked rhetorical and unnecessary questions; (4) failed to differentiate instruction to accommodate the variations in students' abilities; (5) was unable to manage her classroom and student misconduct; (6) failed to incorporate both reading and writing elements in her lessons as is required in all English classes; (7) failed to integrate technology and visual aids; (8) failed to discipline students for inappropriate behavior; (9) did not incorporate group work into her lessons; (10) prepared handouts that contained spelling and grammatical errors; and (11) allowed students to use cell phones and other personal electronic devices in class against school and DOE policy. Exhibit GGG.

**Counter-statement**

102.    Plaintiff does not dispute the existence of the observations or meetings referenced in paragraph 102 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

103.    Each write-up by the peer observer thoroughly described the lesson and provided detailed accounts of student misconduct and Plaintiff's inadequate response. <u>Id</u>.    In his final observation report, Michael Elias stated, "Classroom management remains a grave concern." <u>See</u> Michael Elias' class observation of March 23, 2009, Exhibit GGG.

**Counter-statement**

103.    Plaintiff does not dispute the existence of the letter referenced in paragraph 103 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

104.    By letter dated March 30, 2009, the peer observer summarized his findings for Principal Scrogin.  <u>See</u> Michael Elias' class observation report dated March 30, 2009, Exhibit III. He explained that he met with Plaintiff ten times and conducted extensive activities to coach and support her instructional improvement, including, among other things, assisting Plaintiff with writing lesson plans, providing internet and museum resources to enhance Plaintiff's lessons, and recommending a number of specific changes in the administration of her classes.  <u>Id</u>.  The peer observer's letter set forth the following observations: (1) "[e]vidence of effective classroom management techniques is lacking;" (2) "lesson planning remains perfunctory without the necessary planning of higher reasoning questions" and homework assignments do not "expand

the instructional lessons of the day and generally go uncollected;" (3) there is very little student engagement or interaction among students; (4) "[t]here was an absence of serious textual analysis of reading materials in class;" (5) Plaintiff failed to introduce visual material in a meaningful way; (6) Plaintiff did not utilize or become familiar with SMARTBOARD technology despite having requested training on it; and (7) Plaintiff did not use the New York Times or Gallery Walk methodology in her classes to facilitate an improved learning environment.  Id.

## Counter-statement

104.    Plaintiff does not dispute the existence of the letter referenced in paragraph 104 but does not agree with the self-serving characterizations written by the document's author.


## Statement

105.    The peer observer offered the following finding to Principal Scrogin: "Based on my review of all information available, including my observation reports, discussions with you and Mr. Bauer, assistant principal, my conclusions agree with your assessment that [Plaintiff] is unsatisfactory in her instructional job performance in the core responsibilities that were cited as deficient." Id.

## Counter-statement

105.    Plaintiff does not dispute the existence of the letter referenced in paragraph 105 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

106.    In addition to the peer observer's observations, Assistant Principal Bauer observed Plaintiff on February 26, 2009 and Principal Scrogin observed plaintiff on April 23, 2009.  <u>See</u> Assistant Principal Bauer's class observation report dated February 26, 2009, Exhibit JJJ; and Principal Scrogin's class observation report dated April 28, 2009, Exhibit KKK.  Both observations rated Plaintiff's lessons unsatisfactory and noted, among other deficiencies, Plaintiff's continued failure to implement the mini-lesson model and inability to control student misconduct during class.  <u>Id</u>.

**Counter-statement**

106.    Plaintiff does not dispute the existence of the letter referenced in paragraph 106 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

107.    From September 25, 2007 through April 20, 2009, Plaintiff was provided with many hours of assistance.  <u>See</u> Naomi Davies Log of Assistance as of April 20, 2009, Exhibit LLL. Principal Scrogin provided Plaintiff with a copy of the log of assistance, which was placed in her file.  <u>Id</u>.

**Counter-statement**

107.    Plaintiff disputes the log of assistance as meaningless and inaccurate, and does not dispute the existence of the letter referenced in paragraph 107 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

108.     At the end of the 2008-2009 school year. Principal Scrogin rated Plaintiff's overall performance as unsatisfactory.  See Plaintiff's Annual Performance Evaluation for the 2008-2009 school year, Exhibit NNN.  Plaintiff's unsatisfactory performance evaluation was supported by 67 documents.  Id.; see also Exhibits R-MMM.

**Counter-statement**

108.     Plaintiff does not dispute the existence of the documents referenced in paragraph 108 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

109.     During the 2008-2009 school year, two teachers took FMLA leave and subsequently received satisfactory ratings.  Scrogin Aff. ¶ 9.

**Counter-statement**

109.     Plaintiff does not dispute the existence of the documents referenced in paragraph 109 but does not agree with the self-serving characterizations written by the document's author.

**iii. Disciplinary Charges Proffered Against Plaintiff**

**Statement**

110.     Due to the incidents described in detail above that occurred in 2007-2008 and 2008-2009 school years at EBA, DOE took the necessary steps toward terminating Plaintiff for her poor performance by proffering charges against her under section 3020-a of the New York Education Law.  See Specifications dated May 26, 2009, Exhibit OOO.

**Counter-statement**

110.    Plaintiff does not dispute the existence of the documents referenced in paragraph 110 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

111.    Principal Scrogin reassigned Plaintiff due to the disciplinary charges brought against her.  <u>See</u> Principal Scrogin's letter to Plaintiff dated May 4, 2009 regarding her reassignment, Exhibit MMM.

**Counter-statement**

111.    Plaintiff does not dispute the existence of the document referenced in paragraph 111 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

112.    Pursuant to Education Law § 3020-a, DOE preferred fifty-eight specifications against Plaintiff for neglect of duty, incompetent and inefficient service, conduct unbecoming Plaintiff's position, and conduct prejudicial to the good order and efficiency or discipline of the service.  <u>Id.</u>

**Counter-statement**

112.    Plaintiff does not dispute the existence of the document referenced in paragraph 112 but does not agree with the self-serving characterizations written by the document's author.

## Statement

113.    A hearing on the specifications was held before Hearing Officer Richard M. Gaba over fifteen days from September 23 through November 17, 2010.  <u>See</u> Hearing Officer Richard M. Gaba's Opinion and Award dated December 18, 2010, Exhibit PPP.   At the hearing, Plaintiff was represented by counsel.  <u>Id</u>. at p.1.  The hearing record consisted of 1,584 pages of transcript and 175 exhibits.  <u>Id</u>.  Four witnesses testified and Plaintiff had a full and fair opportunity to examine and cross-examine witnesses and to introduce documentary evidence.  <u>Id</u>.

## Counter-statement

113.    Plaintiff does not dispute the existence of the document referenced in paragraph 113 but does not agree with the self-serving characterizations written by the document's author.

## Statement

114.    On December 18, 2010, Hearing Officer Gaba rendered a 67 page decision.  <u>Id</u>. After a careful review of the transcripts and exhibits and the arguments of counsel, Hearing Officer Gaba found Plaintiff guilty of fifty-five (55) of the specifications.  Hearing Officer Gaba found plaintiff not guilty of specifications numbers 1 (neglect of duty for failing to prevent student from engaging in game of dodge ball with racially circumscribed teams), so much of 3-b as pertains to slamming the school-owned laptop computer on a table, and 6-c (inappropriate and professional conduct of using her email to criticize another teacher), and dismissed those specifications.  <u>Id</u>. at 62.   In determining that Plaintiff should be terminated, Hearing Officer Gaba found that:

> This record presents a picture of [Plaintiff], who despite innumerable efforts by EBA administration and the PIP Plus neutral peer observer, stubbornly refused to accept the recommendations of Scrogin Bauer, Lyons, Campbell and

Elias. In almost every observation report and pre and post-observation conference [Plaintiff] was advised to enroll in the PIP program and observe and consult with other specifically named English teachers at EBA. As previously pointed out, [Plaintiff] never followed either of those recommendations. It was only after receiving some sixteen unsatisfactory observation reports that [Plaintiff] agreed to enter the PIP Plus program. Her performance did not improve, however, and Elias concluded that her performance was unsatisfactory. [Plaintiff] could not, or would not, follow the many recommendations to teach and model a skill based mini-lesson, which was a must at EBA. [Plaintiff] had no valid excuse for not following that one direct recommendation even though she was constantly reminded to seek the assistance of others. [Plaintiff] said that she had never taught that way in the past, and was resistant to learning this method. A teacher with more than 20 years of teaching experience should certainly have been able to comply with all the recommendations. [Plaintiff] failed frequently to provide lesson plans to her supervisor and did not follow the EBA template. The only excuse that [Plaintiff] put forward for failing to follow the recommendations on class preparation and instruction was that she was not given any assistance or remediation. The record is overflowing with examples of the administration trying to help [Plaintiff] improve. It simply did not work although [Plaintiff] constantly claimed that she tried to do and did the best that she could. The other outstanding excuse put forward by [Plaintiff] was that her students were so unruly that she could not possibly teach them, and that she was deliberately set up to fail by being assigned to second session after her return from FMLA leave in late January 2008. It was her position that all of the "piling on" of observations and letters to file was brought about by her taking FMLA shortly after she was hired at EBA. Id. at pp. 60-62.

### Counter-statement

114. Plaintiff does not dispute the existence of the document referenced in paragraph 114 but does not agree with the self-serving characterizations written by the document's author.

.

**Statement**

115. Finally, Hearing Officer Gaba found that "[Plaintiff] has not made the necessary effort to become a satisfactory teacher and has actually resisted the concerted efforts of the administration to assist her in becoming a satisfactory teacher." Id. at 62.

**Counter-statement**

115. Plaintiff does not dispute the existence of the document referenced in paragraph 115 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

116. Plaintiff was terminated from her position at the DOE as of January 3, 2011. See Exhibit C.

**Counter-statement**

116. Plaintiff does not dispute the existence of the document referenced in paragraph 116 but does not agree with the self-serving characterizations written by the document's author.

**Statement**

117. On or about December 27, 2011, Plaintiff brought a CPLR article 75 petition in New York State Supreme Court, New York County, Index No. 100349/11, challenging only the arbitrator's penalty of termination. Plaintiff's petition was granted on June 14, 2012 and the matter was remanded to the hearing officer for a lesser penalty. See Davies v. New York City Dept. of Educ., Index No. 100349/11 (Sup. Ct. N.Y. Co. June 14, 2012).

**Counter-statement**

117. Plaintiff does not dispute this Statement of Material Fact.

**Statement**

118.    Plaintiff brought the instant lawsuit on or about August 9, 2010.  <u>See</u> Complaint,

Exhibit A.

**Counter-statement**

118.    Plaintiff does not dispute this Statement of Material Fact.


Dated: New York, New York
        January 31, 2013

                        GLASS KRAKOWER LLP

                By:     _____s/_____
                        Bryan D. Glass, Esq.
                        100 Church Street, 8th Floor
                        New York, NY 10007
                        (212) 537-6859


To: Michael A. Cardozo
    Corporation Counsel of the City of New York
    Attorney for Defendants
    100 Church Street
    New York, New York   10007

Attn:Kathryn Leone, Esq.
      Assistant Corporation Counsel