USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/27/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

NAOMI DAVIES,

                Plaintiff,

      -v-

NEW YORK CITY DEPARTMENT OF
EDUCATION and SARAH SCROGIN,

                Defendants.

------------------------------------------------------------X

No. 10 Civ. 5981 (RA)

OPINION AND ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Naomi Davies brings this action against the New York City Department of Education ("DOE") and Sarah Scrogin (collectively, "Defendants") alleging a violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"). Davies asserts that she was retaliated against for taking leave from her employment as a teacher to recover from an injury caused by a student. Before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons discussed below, Defendants' motion for summary judgment is granted in its entirety.

I.  Background[1]

   A.  Davies' Employment Prior to East Bronx Academy

Davies began working for the DOE in 1985. (Defs. 56.1 ¶ 3.) From 1985 to 2001, she worked as an English teacher at Christopher Columbus High School and then at the Manhattan Center for Science and Math. (Id. ¶¶ 3, 5.) In or around September 2001, Davies resigned from her employment with the DOE but returned in November 2003 to teach English at Evander Childs High School in the Bronx. (Id. ¶¶ 7-8.) In August 2007, Davies was excessed from her position at Evander Childs High School and placed in the Absent Teacher Reserve.[2] (Id. ¶ 9.) Davies testified that she "never had been written up or received an unsatisfactory observation" while teaching at these placements. (Jan. 31, 2013 Davies Decl., Glass Decl. Ex. 3.)

   B.  East Bronx Academy: The 2007-2008 School Year

       1.  Prior to Davies' FMLA leave

In September 2007, while Davies was in the Absent Teacher Reserve, Sarah Scrogin, the Principal at East Bronx Academy ("EBA"), hired her to teach eighth grade English. (Defs. 56.1 ¶¶ 10-11; Davies Dep., Leone Decl. Ex. B 45:10-13.) Davies began her new position at EBA on

---

[1] The underlying facts are drawn from the Defendants' Local Rule 56.1 Statement of Undisputed Material Facts ("Defs. 56.1"), the supporting Declaration of Kathryn Leone ("Leone Decl.") and attached exhibits, Davies' Counter-Statement of Material Facts to Defendants' Rule 56.1 Statement ("Pl. 56.1"), and the Declaration of Bryan Glass ("Glass Decl.") and attached exhibits. Local Civil Rule 56.1(d) requires that "each statement controverting any statement of material fact[] must be followed by citation to evidence which would be admissible." Davies, however, responds to most of Defendants' facts—which cite to the record—by merely stating, "Plaintiff does not dispute the existence of the document but does not agree with the self-serving characterizations written by the document's author." Moreover, in support of her opposition, Davies relies solely on her memorandum of law, the Glass Declaration and its three exhibits, the UFT-DOE Section 3020-a Disciplinary Procedure for Teacher Performance Unit Cases, the June 14, 2012 Decision and Order of New York State Supreme Court Justice Manuel Mendez, and Davies' January 31, 2013 Declaration, none of which provide a basis upon which she can dispute the majority of Defendants' assertions. Accordingly, because Davies' 56.1 counter-statement consists almost entirely of admissions or conclusory denials not supported by citations to evidence, the material facts presented by Defendants are undisputed and deemed admitted, except where otherwise noted. See Local Civil Rule 56.1(c).

[2] "A teacher who is 'excessed' is not fired, but rather is reassigned to another position in the school system." Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 639 (2d Cir. 2000). The Absent Teacher Reserve is "a substitute teacher pool for teachers without a 'regular or specific program' for a given term." Fisher v. N.Y.C. Dep't of Educ., 666 F. Supp. 2d 309, 315 (E.D.N.Y. 2000).

September 25, 2007, approximately three weeks after the beginning of the school year. (Defs. 56.1 ¶ 12.)

Two weeks later, on October 9, 2007, Davies filed a Comprehensive Injury Report asserting that she was injured "by a student falling onto [her] back" on October 4, 2007. (Id. ¶ 13; Oct. 9, 2007 Comprehensive Injury Report, Leone Decl. Ex. D.) Because of this incident, she was absent from work on October 5, 2009 and October 9 through October 12, 2009. (Defs. 56.1 ¶ 14.) Davies returned to work on Monday, October 15, 2007, at which time she met with Scrogin and Assistant Principal Campbell to discuss her attendance. (Id. ¶ 15.) They advised Davies that excessive absences could result in an unsatisfactory rating for the school year. (Id.) Davies worked from October 15, 2007 to October 29, 2007, and on October 30, 2007, she stopped returning to work. (Id. ¶ 16.)

On November 13, 2007, Davies submitted a Request for Leave under the FMLA, which was subsequently approved by the DOE for the period from December 1, 2007 to January 22, 2008. (Id. ¶¶ 18-19; Request for Leave, Leone Decl. Ex. G.) Davies testified that she decided to take FMLA leave because "[she] wasn't well" and that "[i]t was a whole slew of things. It was my back. It was psychologically, my stomach, but it was all connected. It all went back to being pushed. That set it off. Not coming to school to enjoy my teaching career. It wasn't good." (Defs. 56.1 ¶ 17; Davies Dep., Leone Decl. Ex. B 57:21-24.)

### 2.   After Davies' FMLA Leave

On or about January 23, 2008, Davies returned from FMLA leave. (Defs. 56.1 ¶ 20.) Scrogin assigned her to teach one "second session" English class and to fill in for other teachers on an as needed basis throughout the school day. (Id.) Davies was one of four teachers assigned to teach second session classes. (Id. ¶ 24.) These classes were offered to students from 2:00

p.m. to 6:00 p.m., but Davies was only required to teach from 2:00 p.m. to 3:10 p.m., allowing her to keep regular school day hours. (Id. ¶ 21.) Although her class assignment was different, she received the same salary as before taking FMLA leave. (Id. ¶ 22.) Davies, along with other teachers at EBA, taught classes in the cafeteria, locker room, and library. (Id. ¶ 23.)

At EBA, Scrogin or one of the assistant principals (collectively, "the administration") conducts classroom observations on a regular basis to ensure that the teachers are providing satisfactory instruction. (July 2, 2012 Scrogin Decl. ¶ 4.) Typically, tenured teachers are observed once per semester. (Id.) A teacher may be observed more frequently if she has received unsatisfactory ratings in the past or if there have been complaints about the teacher's performance. (Id.) From March 2008 to May 2008, Davies was formally observed by the administration five times and each lesson was rated unsatisfactory in a subsequent observation report. (Defs. 56.1 ¶¶ 27, 31, 33, 36-37.) The administration found that Davies did not implement the skill based mini-lesson model used at EBA, did not engage the students and did not assess the students' level of understanding.[3] The administration encouraged Davies to improve her performance by considering their recommendations for improvement, enrolling in the union's Peer Improvement Program ("PIP")[4] and observing her colleagues for examples of best practices. (Id. ¶¶ 29, 32, 34.)

At the end of the 2007-2008 school year, Davies received a rating of unsatisfactory for her annual performance evaluation. (Id. ¶ 41.) This unsatisfactory performance evaluation was supported by eight documents, including the administration's observation reports. (Id.)

---

[3]    See Mar. 10, 2008 Observation Report, Leone Decl. Ex. I; Mar. 14, 2008 Observation Report, Leone Decl. Ex. K; Mar. 24, 2008 Observation Report, Leone Decl. Ex. L; May 12, 2008 Observation Report, Leone Decl. Ex. M; May 6, 2008 Observation Report, Leone Decl. Ex. N.

[4]    PIP is a program designed for tenured teachers who are in need of significant instructional improvement and in danger of facing incompetence charges under Section 3020-a of the New York Education Law. (Defs. 56.1 ¶ 94.)

In light of her unsatisfactory reviews, Scrogin, Assistant Principal Lyons, Davies and her union representative met on June 23, 2008 to discuss the administrators' concerns. They discussed ways to improve Davies' performance for the next school year and created an action plan which Davies signed on June 26, 2008 ("Action Plan"). (Id. ¶ 42.) The Action Plan set forth goals in five areas: (1) instructional management; (2) classroom management; (3) creating and maintaining a positive learning environment; (4) lesson planning and preparation; and (5) professional responsibilities. (Action Plan, Leone Decl. Ex. R.)

### B. East Bronx Academy: The 2008-2009 School Year

#### 1. Incidents of Student Misbehavior

Throughout the 2008-2009 school year, while continuing to teach at EBA, Davies struggled with classroom management and frequently sought help from the administration and other staff members in handling disruptive student behavior. Some of the documented incidents of student misbehavior in Davies' classes included: (1) a student accessing a pornographic website on a school computer in class, (Defs. 56.1 ¶ 47); (2) a student throwing paper during class, (id. ¶ 73); (3) students inputting information into a library computer which prompted the computer to "speak" obscene messages aloud, (id. ¶ 75); (4) students microwaving their textbooks during a class which was held in the school cafeteria, (id. ¶ 80); and (5) students playing a "Blacks v. Latinos" game of dodgeball, (id. ¶ 79). Davies alleges that despite filing numerous incident reports about student misbehavior, her concerns went unaddressed by the administration. (Pl. Mem. 6.) Davies, however, provides no evidence to support this allegation.

In addition, Davies reported sexually inappropriate student behavior to the administration on two occasions. First, on or around October 24, 2008, Davies reported to Assistant Principal Bauer and New York Police Department ("NYPD") Officer Beaumont that a student had touched

her and made sexually inappropriate gestures to her by thrusting his pelvis. (Defs. 56.1 ¶ 52.) When questioned, three students told Scrogin and Officer Beaumont that Davies had pushed the student. (Id.) The NYPD ultimately concluded that there was no criminal activity by the student and instead prepared a corporal punishment intake form against Davies and submitted it to the Office of Special Investigations. (Id.) Davies alleges that this intake form was ultimately unsubstantiated. (Pl. 56.1 ¶ 53.)

Second, on December 4, 2008, Davies complained to a school dean that two of her students were stalking her and that one of her students had videotaped the other simulating a sexual act toward her. (Defs. 56.1 ¶ 74.) The dean and the school safety agent reviewed the video and found no evidence of what Davies had described. (Id.) At a meeting held six days later with the administration, Davies and her union representative, she denied using the word "stalking" and complained only about students videotaping "dancing" in class. (Dec. 10, 2008 Letter, Leone Decl. Ex. LL.)

### 2. Davies' Performance

Several students and teachers complained to the administration about Davies' instruction and classroom management during the 2008-2009 school year. Students complained that they were "not learning anything" because Davies was disorganized and "all [they] do is copy things" into their notebooks. (Defs. 56.1 ¶ 45; Sept. 18, 2008 Letter with Student Complaints, Leone Decl. Ex. S.) Several students requested to be transferred out of Davies' classes. (Nov. 7, 2008 Letter, Leone Decl. Ex. Z.) One complaint, signed by "a large group of [Davies'] students," stated:

> To Whom It May Concern: I am writing to let you know that our teacher for English Theater is not teaching well. Ms. Davies doesn't teach like a teacher should. Ever since September we have been writing monologues, but she doesn't say what it is. She is also annoying and rude. Please take this under

consideration.

(Defs. 56.1 ¶ 62; Nov.18, 2008 Letter, Leone Decl. Ex. EE.)

Teachers also complained about Davies on several occasions. One teacher complained that Davies released students from class early, which disrupted instruction in other classes. (Defs. 56.1 ¶ 50; Oct. 14, 2008 Letter and Teacher Emails, Leone Decl. Ex. V.) In response, Davies explained that she released the students early to provide time for her to clean up the classroom. (Defs. 56.1 ¶ 50.) Scrogin informed her that such early dismissal was in dereliction of her teaching duties. (Id.) Later in the year, several teachers complained about overloading in their classes due to students being transferred out of Davies' classes because of her inability to manage the classroom. (Id. ¶ 77.) An anonymous complaint was also made to the New York City 311 call center on October 16, 2008, alleging that Davies had no control over her classroom, did not help her students and was incompetent. (Id. ¶ 51.)

These complaints were discussed with Davies during five different meetings. At these meetings, the administration reminded her of the goals in her Action Plan. (Id. ¶ 46.) Scrogin advised Davies to utilize the EBA Ladder of Referral in the school's "Staffulty Handbook" to handle disciplinary issues. (Id. ¶ 49.)

The administration also had concerns about Davies' ability to manage her professional responsibilities. For example, in November 2008, Davies and another teacher got into an argument on their school email accounts because Davies was upset that the other teacher did not assist her when she was struggling with classroom management. (Id. ¶¶ 65-66.) At a subsequent meeting with Davies, Scrogin and Bauer discussed her inappropriate use of her school email account. (Id. ¶ 65.) Davies asserts that she was unaware of any rule regarding use of her school email account and that the other teacher was not disciplined. (Pl. 56.1 ¶ 66.) The administration

also expressed concern when Davies failed to enter students' grades into the school's "Gradebook Wizard." (Defs. 56.1 ¶ 76.) Lastly, the administration faulted Davies for slamming a school laptop computer on a table and for failing to report a suspected theft of her school issued laptop for two days. (Id. ¶ 69.) Davies contends that she did not deliberately slam the school laptop and timely reported the theft of her school issued laptop. (Pl. 56.1 ¶ 70.)

In an effort to improve her performance, Davies agreed to participate in the PIP Plus, (Defs. 56.1 ¶ 95), but alleges that she was misled about the nature and intentions of the PIP Plus as a tool to be used against teachers at their subsequent disciplinary hearings, (Pl. 56.1 ¶ 96). As part of the program, Michael Ellis, Davies' designated peer observer, conducted six classroom observations of her from January 2009 through March 2009. (Defs. 56.1 ¶ 100.) Ellis wrote reports of his observations and made recommendations for improvement. In one report, he stated, "[c]lassroom management remains a grave concern." (Id. ¶ 103.) After concluding his observations, Ellis found "that [Davies] is unsatisfactory in her instructional job performance." (Id. ¶ 105.)

The administration also observed Davies teaching a lesson eleven times throughout the 2008-2009 school year and found each lesson to be unsatisfactory.[5] At the conclusion of the 2008-2009 school year, Scrogin rated Davies' overall performance unsatisfactory. This finding was supported by 67 documents, including observation reports, letters to Davies and written complaints. (Id. ¶ 108.)

---

[5] See Sept. 5, 2008 Observation Report, Leone Decl. Ex. UU; Sept. 12, 2008 Observation Report, Leone Decl. Ex. VV; Sept. 22, 2008 Observation Report, Leone Decl. Ex. WW; Oct. 14, 2008 Observation Report, Leone Decl. Ex. XX; Oct. 21, 2008 Observation Report, Ex. YY; Nov. 8, 2008, Observation Report, Leone Decl. Ex. ZZ; Nov. 20, 2008 Observation Report, Leone Decl. AAA; Dec. 19, 2008 Observation Report, Leone Decl. Ex. BBB; Jan. 20, 2008, Leone Decl. Ex. EEE; Feb. 26, 2009 Observation Report, Leone Decl. Ex. JJJ; Apr. 28, 2009, Leone Decl. Ex. KKK.

### C. Procedural History

Due to Davies' performance in the 2007-2008 and 2008-2009 school years, the DOE proffered charges against her pursuant to § 3020-a of the New York Education Law. (Id. ¶ 110.) The DOE proffered fifty-eight specifications against Davies for "neglect of duty, incompetent and inefficient service, conduct unbecoming of Davies' position, and conduct prejudicial to the good order and efficient or discipline of the service." (Id. ¶ 112; May 4, 2009 Letter, Leone Decl. Ex. MMM.)

A hearing on the specifications was held before Hearing Officer Richard Gaba over fifteen days, at which Davies was represented by counsel. (Defs. 56.1 ¶ 113.) The hearing record consisted of 1,584 pages of transcript and 175 exhibits. (Id.) Four witnesses testified. (Id.) On December 18, 2010, the Hearing Officer rendered a 67-page decision finding Davies guilty of fifty-five of the fifty-eight specifications and ordering her termination. (Id. at 114.)[6] Accordingly, Davies was terminated from her position at the DOE as of January 3, 2011. (Id. ¶ 116.)

On or about December 27, 2011, Davies brought a CPLR article 75 petition in New York State Supreme Court challenging the Hearing Officer's penalty of termination. (Id. ¶ 117.) Davies' petition was granted on June 14, 2012 and the matter was remanded to the Hearing Officer for a lesser penalty. (Id.)

Davies brought the instant lawsuit on August 9, 2010 against Defendants claiming that

---

[6] Defendants assert that Davies is precluded from challenging the underlying factual findings of her § 3020-a hearing. Plaintiff responds by arguing that preclusion should not apply in this instance because a State Supreme Court Justice vacated the Hearing Officer's penalty of termination. (Pl. Opp'n 4.) Defendants are correct that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts." Burkybile v. Bd. of Educ. of the Hastings-on-Hudson Union Free Sch. Dist., 411 F.3d 306, 312 (2d Cir. 2005). In light, however, of the overwhelming evidence in this record, discussed below, showing a non-discriminatory reason for the employment actions against Davies and her failure to prove pretext, the Court need not even rely on the Hearing Officer's factual findings.

they retaliated against her for taking leave in violation of the FMLA. Defendants filed the instant motion for summary judgment, which was fully briefed on February 21, 2013. Defendants' motion is granted.

## II. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a dispute about a genuine issue of material fact occurs if the evidence is such that a 'reasonable [factfinder] could return a verdict for the nonmoving party.'" Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "While conclusory statements or mere allegations are not sufficient to defeat a summary judgment motion, [the court is] required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Donnelly v. Greenburgh Cent. Sch. Dist. No. 7, 691 F.3d 134, 141 (2d Cir. 2012) (internal citations and quotation marks omitted).

"A trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." Gallo v. Prudential Resid. Servs., 22 F.3d 1219, 1224 (2d Cir. 1994). "Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." Holcomb v. Iona Coll., 521 F.3d 130, 137 (2d Cir. 2008).

## III. Discussion

### A. FMLA Retaliation

"The FMLA gives eligible employees an 'entitlement' to twelve workweeks per year of

unpaid leave 'because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'" Sista, 445 F.3d 161, 174 (2d Cir. 2006) (quoting 29 U.S.C. § 2612(a)(1)(d)). Thereafter, the employee has the right to return to the position that she held before taking leave, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. 29 U.S.C. § 2614(a). An employee has "a private right of action to seek both equitable relief and money damages against any employer (including a public agency)" should that employer "interfere with, restrain or deny the exercise of FMLA rights." Nevada Dept. of Human Resources v. Hibbs, 538 U.S. 721, 724-25 (2003) (internal citations omitted). Accordingly, "employers may not 'use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.'" Smith v. Westchester Cnty., 769 F. Supp. 2d 448, 462 (S.D.N.Y. 2011) (quoting 29 C.F.R. § 825.220(c)).

Retaliation claims under the FMLA are analyzed under the same burden-shifting framework established by the Supreme Court in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973), for Title VII retaliation claims. Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004). Under the McDonnell Douglas framework, once a plaintiff makes out a *prima facie* case of retaliation, the burden of production shifts to the defendant to state a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802-04; Farias v. Instructional Sys., 259 F.3d 91, 98 (2d Cir. 2001). "[S]hould the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for retaliation." See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981); McGuiness v. East West Indus., 857 F. Supp. 2d 259, 263-64

(E.D.N.Y. 2012).

### 1.   *Prima Facie* Case of Retaliation

"To establish a prima facie case of FMLA retaliation, a plaintiff must establish that (1) he exercised rights protected under the FMLA, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." Donnelly, 691 F.3d at 147 (internal quotation marks omitted). There is no dispute that Davies exercised rights protected under the FMLA or that her unsatisfactory performance ratings and misconduct charges were adverse employment actions.[7] Thus, only the second and fourth factors remain in dispute.

Davies' evidence in support of a *prima facie* case is weak at best. Her burden at this first step, however, is minimal. See Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) ("the burden of proof that must be met to establish a *prima facie* case is minimal") (internal alterations and quotation marks omitted). As to the second factor of her *prima facie* case, Davies, as a properly credentialed, tenured teacher who has been employed by the DOE for over 20 years,

---

[7] In her complaint, Davies asserts that Defendants also took the following additional adverse actions upon her return from FMLA leave: (1) switching her class assignment; (2) requiring her to teach in the locker room, cafeteria and library; (3) frequently observing her classroom instruction; and (4) failing to discipline her students. (Compl. ¶¶ 14, 15, 21(1), 21(6), 21(7).) None of these four actions meets the requisite standard for being materially adverse. "For purposes of the FMLA's anti-retaliation provision, a materially adverse action is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." Millea v. Metro-North R. Co., 659 F.3d 154, 164 (2d Cir. 2011). To be "materially adverse," a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." Brown v. City of Syracuse, 673 F.3d 141, 150 (2d Cir. 2012) (internal quotation marks omitted). Davies' new class assignment did not affect her salary or hours and unconventional classroom settings and frequent observations—especially in light of a showing of poor performance—were common practice at EBA. See e.g., Galabaya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 639-40 (2d Cir. 2000) (teacher's reassignment to class outside his area of expertise at a different school with inferior facilities did not constitute an adverse employment action); Moccio v. Cornell Univ., 889 F. Supp. 2d 539, 586-88 (S.D.N.Y. 2012) (requiring an employee to adjust to organizational changes not a materially adverse action); Nicastro v. Runyon, 60 F. Supp. 2d 181, 186 (S.D.N.Y. 1999) (excessive scrutiny does not constitute adverse action). In any event, Davies appears to have abandoned any claim of retaliation based on these allegations because she failed to respond to Defendants' argument that these claims lack merit. See, e.g., Singleton v. City of Newburgh, 1 F. Supp. 2d 306, 312 (S.D.N.Y. 1998); Powell v. Consolidated Edison Co. of New York, Inc., No. 97 Civ 2439 (GEL), 2011 WL 262583, at *8 n.10 ("Because [plaintiff] has failed to respond with any evidence . . . to the extent that any claims are predicated on these allegations, they must be considered abandoned and are thus dismissed."). Accordingly, the Court does not consider these allegations in its analysis.

meets the "minimal qualifications for [the] job." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001). Davies claims that she has also met her burden on the fourth factor, showing that Defendants' adverse actions give rise to an inference of retaliatory intent, by demonstrating that she received her first unsatisfactory classroom observation and annual rating only after returning from FMLA leave. Although Davies' evidence as to the fourth factor is less than convincing, for purposes of this motion, the Court will assume, without deciding, that Davies has met such burden and thus established a *prima facie* case. See e.g., Jain v. McGraw-Hill Companies, Inc., 827 F. Supp. 2d 272, 277 (S.D.N.Y. 2011); Di Giovanna v. Beth Israel Medical Center, 651 F. Supp. 2d 193, 204 (S.D.N.Y. 2009).

### 2. Legitimate, Nondiscriminatory Reason

Assuming Davies established a *prima facie* case of retaliation, Defendants must articulate a "legitimate, non-discriminatory reason for the employment action," which they have clearly done. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). "The employer's burden is 'merely one of production, not persuasion; it can involve no credibility assessment.'" Esser v. Rainbow Advertising Sales Corp., 448 F. Supp. 2d 574, 581 (S.D.N.Y. 2006) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). Defendants assert that their adverse actions—unsatisfactory ratings and disciplinary charges—were a result of Davies' poor performance. Defendants have provided ample evidence of Davies' incompetence including a total of sixteen unsatisfactory classroom observations, two consecutive years of unsatisfactory annual ratings and numerous complaints from teachers and students. Defendants have thus met their burden. See Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 141 (2d Cir. 1993) (accepting poor performance as a legitimate reason for adverse action).

### 3. Pretext

At this stage, the burden shifts back to Davies to offer admissible evidence from which a reasonable jury could conclude that Defendants' legitimate, non-discriminatory reason for the employment actions was mere pretext. Davies "need not show that [D]efendants' proffered reason was false or played no role" in the adverse actions "but only that it was not the only reason, and that [her] filing for FMLA leave was at least one motivating factor." Di Giovanna, 651 F. Supp. 2d at 205.

Davies argues that a jury could conclude that Defendants gave her unsatisfactory ratings and initiated disciplinary proceedings in retaliation for taking FMLA leave because their actions "were based on nothing more than subjective self-serving observations initiated by the very administrators who sought to terminate Plaintiff's employment." (Pl. Opp'n 5). This inference is not supported by the record. Defendants documented Davies' poor performance over the course of two school years. She was observed and reviewed by Principal Scrogin as well as three different assistant principals. Davies' performance was also assessed by a peer observer as part of her participation in PIP, who concurred with the administration's conclusions. Insofar as Davies argues that constant observations themselves were evidence of retaliatory animus, "courts have consistently rejected pretext claims premised . . . upon even relatively intense teacher scrutiny." Missick v. City of New York, 707 F. Supp. 2d 336, 350 (E.D.N.Y. 2010) (collecting cases). Defendants also presented evidence of Davies' poor performance through student and teacher complaints. Given the variety and quantity of evidence in the record demonstrating that Davies was not competently performing her job, there is no reason to believe that the unsatisfactory reviews and subsequent disciplinary charges were a pretext for Defendants' retaliation. See Ralkin v. N.Y.C. Transit Auth., 62 F. Supp. 2d 989, 998 (E.D.N.Y. 1999)

(finding that use of multiple evaluators undercuts discriminatory inference).

Davies also argues that Defendants' actions must have been retaliatory because she "never received a single written unsatisfactory observation from school administration before she took [FMLA leave] . . . after more than 20 years of satisfactory and discipline-free teaching." (Pl. Opp'n 5). This argument fails, however, because "[t]he mere fact of past satisfactory performance, followed by negative feedback, is not suggestive of impermissible animus." Missick, 707 F. Supp. 2d at 350. Additionally, her argument that pretext is demonstrated by the shift from satisfactory to unsatisfactory reviews after her FMLA leave ignores the fact that the administration did not have the opportunity to evaluate Davies before she took leave as her period of absence began only two weeks after she started teaching at EBA. Accordingly, the prior evaluations, which occurred in different teaching positions at different schools, have diminished value for purposes of revealing Defendants' intent. Lastly, the only evidence in the record of Davies' 20 years of satisfactory reviews is a reference in the State Supreme Court decision that she had "no prior disciplinary charges" and her own declaration, which pales in comparison to the overwhelming record of Davies' poor performance at EBA before the Court.

Without providing any evidence, direct or indirect, that Defendants' proffered reasons for giving Davies unsatisfactory ratings and instituting disciplinary charges against her were pretextual, Davies has failed to demonstrate that a reasonable trier of fact could find that her exercising her rights under the FMLA was a motivating factor in Defendants' actions. See Geromanos v. Columbia Univ., 322 F. Supp. 420, 429 (S.D.N.Y. 2004) ("FMLA is not a shield to protect employees from legitimate disciplinary action by their employers if their performance is lacking in some matter unrelated to their FMLA leave."); see also Sista, 445 F.3d at 176 (finding that "the FMLA 'gives no greater job security than that to which the employee would

have been entitled prior to taking leave'") (quoting Hale v. Mann, 219 F.3d 61, 66 (2d Cir. 2000)).

## IV.  Conclusion

For the foregoing reasons, Defendants' motion is granted in its entirety. The Clerk of Court is directed to close docket number 19, enter judgment for Defendants and close the case.

SO ORDERED.

Dated:   March 27, 2013
         New York, New York

_____
Ronnie Abrams
United States District Judge